Ernest E. Freeman, Appellant, v. Mary Freeman et al., Appellees.

Gen. No. 41,877.

642

Heard in the third division of this court for the first district at the October term, 1941. Opinion filed May 27, 1942.

LEONARD & LEONARD, of Chicago, for appellant; GORDON McLEISH LEONARD and ERNEST E. FREEMAN, JR., both of Chicago, of counsel.

ROSS LANGDON and CHAS. O. RUNDALL, both of Chicago, for certain appellees.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the plaintiff from an order of the superior court entered February 5, 1941, striking the complaint as amended, and from an order entered February 10, 1941, denying plaintiff leave to amend the complaint and dismissing the complaint for want of equity.

From the record it appears that on April 19, 1938, the plaintiff, Ernest E. Freeman, filed his complaint against defendants praying for relief by way of equitable lien on certain life insurance referred to in a contract attached to the complaint. After motion to strike and argument thereon, Lommen D. Eley, administrator, obtained leave to intervene as a party; that on October 4, 1938, plaintiff and Eley, administrator, as coplaintiffs filed an amended complaint, upon which issue was joined and hearing had before a master.

From a decree granting plaintiffs their requested relief, defendants appealed to this court, where the decree was reversed. (*Freeman v. Equitable Life Assurance Society of the United States*, 304 Ill. App. 517.)

It further appears that on October 26, 1940, the mandate of this court was filed, and on October 30, 1940 defendants filed their written motion to dismiss the proceeding and in support of their motion called the trial court's attention to the opinion of this court. On November 12, 1940, the cause was redocketed and plaintiffs Freeman and Eley, administrator, were given leave to file an amended complaint. Thereafter, on November 22, 1940, plaintiff Freeman filed an "Amendment of Ernest E. Freeman to Amended Bill of Complaint." On the same day there was filed "Amendment of Lommen D. Eley to Amended Bill of Complaint Heretofore Filed Herein."

On November 28, 1940, defendants filed their written motion to strike the amended complaint as amended by the two amendments filed on November 22, 1940. On February 5, 1941, defendants' motion was sustained, and the two amendments filed on November 22, 1940, were stricken.

Thereafter, on February 10, 1941, plaintiff, Ernest E. Freeman, filed his written motion for leave to file instanter an amendment to the amended complaint, attaching the proposed amendment. The court after argument found that the "proposed amendment is substantially insufficient in law," denied leave to file, and dismissed the cause.

The complaint filed by plaintiff alleges that on or about June 1, 1936, the plaintiff entered into an agreement, in writing, with his brother, Walter Freeman (a copy of which agreement was attached to and incorporated in the complaint); that the plaintiff, as recited in the contract, had turned over to Walter Freeman the sum of $30,000 which was used, together

with certain funds of Walter Freeman and Louise Rothermel, to purchase special assessment bonds and vouchers in the aggregate approximate face amount of $573,000. The balance of the purchase price, amounting to approximately $212,000, was borrowed from the Continental Illinois National Bank and Trust Company, for which loan a note was executed by Walter Freeman and one Arthur T. Galt, secured by the pledge of the aforementioned special assessment bonds and vouchers; that by partial liquidation of the collateral, the obligation to the bank had been reduced from time to time and at the time of filing the complaint amounted to approximately $110,000.

It is further alleged in the complaint that Walter Freeman at the time of entering into this agreement with Ernest E. Freeman had certain contracts or policies of life insurance upon his life payable to one of the defendants or to the estate of Walter Freeman, with the full right and power in Walter Freeman to change beneficiaries in his own discretion; that certain of said policies providing for the payment of $30,000 on Walter Freeman's death were issued by the defendant Equitable Life Assurance Society.

It was further alleged that Walter Freeman, in consideration of the plaintiff's $30,000 investment and in consideration of the discretionary powers given him under the contract, in order to secure the plaintiff against loss of any part of the sum advanced by plaintiff, agreed to assign and deliver certain of the aforesaid policies in the amount of $30,000, and that Ernest E. Freeman, relying upon Walter Freeman's undertaking, turned over the said sum to Walter Freeman for the purposes indicated in the agreement; that, thereafter, Walter Freeman, contrary to his agreement with plaintiff, made the policies of life insurance payable to the defendants, Mary, Marilyn and Walter Freeman, Jr.; that Walter Freeman failed to deliver the policies of life insurance, although re-

quested to do so by plaintiff; that on Walter's death on January 6, 1938, the plaintiff was deprived of the benefit of Walter Freeman's special ability in the liquidation of the special assessment bonds; that the plaintiff has not been repaid any part of the $30,000 advanced by him and that Walter Freeman's estate is insolvent; that Walter Freeman, by reason of his peculiar relationship to the plaintiff, was charged with a trust; that in breach of said trust he had deprived the plaintiff of the benefit of the insurance, as aforesaid; that defendants had collected insurance to the extent of $50,000 after being informed of the claim of the plaintiff; that the defendant Equitable Life Assurance Society had been notified of the claim of the plaintiff; that the plaintiff has suffered a loss of more than one half of the sum of $30,000 advanced by him to Walter Freeman; that no part of said sum had been returned to him; that he has received only $600 from Walter Freeman, which was paid to him as a distribution of profits and not as a return of capital; that since the death of Walter Freeman the plaintiff had been compelled to and had paid large sums of money to protect the $30,000 advanced; that on or about March 8, 1939, the purchase money note was called for payment by the Continental Bank; that the bank refused to extend the time of payment of the note upon the ground that the security for the note was insufficient; that the plaintiff, together with other persons interested, was compelled to advance large sums of money to prevent the sale at a loss of the aforesaid special assessment bonds; that to induce one of the other persons interested to post additional collateral for the payment of the note, plaintiff was compelled to surrender part of his interest in the undertaking and that plaintiff has been compelled to pay large amounts of cash with no possibility of reimbursement to protect his $30,000 advanced; that the value of the special assessment bonds and vouchers does not exceed by

more than $25,000 the amount of the indebtedness for which the bonds are pledged, and that the members of the syndicate who have advanced cash, including plaintiff, have suffered a loss of more than one half of the capital so advanced; that there is no ready market for the securities and if they are sold at a forced sale the proceeds would not exceed the amount of the indebtedness for which they are pledged, and that in consequence of such a sale plaintiff's capital loss would be total. It is alleged that the value of the bonds was not provable with any degree of certainty at the time of the first trial, so it was impossible to ascertain at that time whether or not he had actually sustained the loss, but that with the evidence of payments made upon the bonds in the period of time elapsing between the first trial and the date of the amendment it had become possible to establish that the bonds are of a value exceeding by not more than $25,000 the amount of the indebtedness for which they are pledged.

Plaintiff further alleged that at the time of the execution of the agreement sued upon Walter Freeman was uninsurable by reason of his health; that on or about May 15, 1936, Walter Freeman, pursuant to a contract with one Arthur T. Galt applied for $50,000 of insurance to be made payable to the Continental Illinois National Bank and Trust Company, which application was rejected; that thereafter until the time of his death, Walter Freeman continued to be uninsurable by reason of the state of his health and the rejection of his insurance application; that Walter Freeman made no other application for insurance, other than the one required by his contract with Galt, between January 1, 1936 and the date of his death.

It appears further from plaintiff's allegations that at the time of the execution of the contract between himself and Walter Freeman, Walter Freeman had only two policies payable to his estate, the first policy

with the Equitable Life Assurance Society of the United States in the amount of $25,000, subject to a loan to Walter Freeman in the approximate amount of $6,700, so that the proceeds of this policy over and above said loan would amount to approximately $18,000. In addition thereto, Walter Freeman had a policy of $15,000 with the Mutual Trust Life Insurance Company free and clear of any loan. All other policies on Walter's life at the time of the execution of the contract and until November 27, 1937, were made payable to Mary Freeman. On or about November 27, 1937, the unencumbered $15,000 policy was altered by Walter Freeman to change the beneficiary from his estate to his wife, individually; and on December 1, 1937, the beneficiary of the $25,000 Equitable Life policy was changed from his estate to Mary Freeman, Walter Freeman, Jr., and Marilyn Freeman, defendants.

It is further alleged that under the terms of the contract sued upon the aforesaid two policies are identified as the subject matter of the contract and that relief should be given plaintiff accordingly. Plaintiff requested that the court order the defendants to pay to him the sum of $30,000 out of the proceeds of the two policies referred to with the Equitable Life Assurance Society of the United States and the Mutual Trust Life Insurance Company, respectively, or, in the alternative, that the defendants be required to reimburse plaintiff for capital losses incurred by the plaintiff and that the defendants be required to furnish security against further loss upon such terms as the court may deem just.

The amendment of coplaintiff Lommen D. Eley, as administrator of the estate of Walter Freeman, adopted by Ernest E. Freeman, plaintiff, stated that Walter Freeman was insolvent after January 1, 1936, and that from time to time during the rest of his life Walter Freeman converted to his own use the property

of his customers; that prior to November 27, 1937, Walter Freeman had insurance policies made payable to his estate in amounts more than sufficient to make good the contract with Ernest E. Freeman, but that on or about said date Walter Freeman at the instance and request of the defendants or one of them changed the beneficiary upon each of said policies in favor of the defendants; that the changes in beneficiary were made in contemplation of the death of Walter Freeman with the intent to cheat and defraud Ernest E. Freeman, plaintiff; that Walter Freeman took his own life on or about January 6, 1938; that under the statutes of Illinois his administrator had the power to perform contracts entered into by the deceased and that Eley, as administrator, had with the approval of the probate court elected to complete the contract upon which suit was brought and demand the proceeds of the policies previously payable to the estate of Walter Freeman or so much thereof as might be necessary to complete the contract of Walter Freeman with Ernest E. Freeman, and that Eley further alleged that Walter Freeman's failure to complete his contract with Ernest Freeman was with the purpose and intent of cheating and defrauding said Ernest Freeman; that the administrator had certain rights against Ernest E. Freeman, once the contract was performed, which the court should require Ernest E. Freeman to fulfill.

There were two amendments touching upon the question of identification of the *res*. The first was that of the plaintiff, Eley, as administrator of the estate of Walter Freeman, which we have set forth in substance. The second was that of plaintiff Ernest E. Freeman, alleging that from and after the date of the execution of the contract sued upon Walter Freeman was, by reason of the condition of his health, uninsurable; that pursuant to a contract with Arthur T. Galt he had applied for $50,000 of insurance to be made payable to the Continental Illinois National Bank & Trust

Company, which application was rejected because of the condition of his health and that thereafter Walter Freeman continued to be uninsurable by reason of the condition of his health and said rejection; that at the time of the execution of the contract Walter Freeman had two and only two policies made payable to his estate; that the amounts payable on said policies over and above the amount of a loan made upon one of them amounted to approximately $33,300; that all other policies were made payable to the defendant Mary Freeman; that on or about November 27, 1937, the said policies were so changed as to make the beneficiaries the defendants in this case instead of the estate of Walter Freeman. The plaintiff, Ernest E. Freeman, requested an order on the defendants to pay to him the sum of $30,000 out of the proceeds of the policies or, in the alternative, that the defendants be required to reimburse him for losses already incurred and to furnish security against further loss upon such terms as the court might provide. It is suggested that these amendments introduce a further means of identification of the subject matter of the contract; that the trial court at the first hearing had concluded from the evidence that the policies referred to in the contract were policies then in existence and that inasmuch as Walter Freeman had failed to further identify the policies the defendants who were claiming through him as volunteers were estopped from requiring any further identification; and that upon remandment the plaintiffs showed that by the very terms of the contract itself a further identification of the policies was possible.

Considering the questions involved in this litigation, the entire case depends upon whether there was sufficient identification of the policies upon which an equitable lien might be imposed. It is to be noted that the relief prayed for was that defendants be ordered to pay plaintiff the sum of $30,000, out of the proceeds

of the policies, or, in the alternative, that the defendants be required to reimburse him for losses already incurred and to furnish security against further loss upon such terms as the court might provide. That does not tend to establish that there would be evidence which identified the policies in question as those called for by the contract. It certainly is not provided in the contract that the court was to enter a decree to reimburse the plaintiff and furnish security against further loss. As indicated in this opinion, it is necessary that the identity of the subject matter be established and that the evidence establish the right of the plaintiff to have a lien upon the policies that were agreed upon. The plaintiff, however, earnestly seeks to establish that an equitable lien attached to the policies of life insurance upon the execution of the contract and that that lien could not be defeated by the change in beneficiary on the policies from Walter Freeman's estate to the defendants in this case, particularly when, as alleged, the changes were made at the request of the defendants or one of them with the purpose and intent of cheating and defrauding Ernest E. Freeman.

The defendants urge, first, that plaintiff had no right to amend after remandment in the earlier appeal, wherein the decree was reversed and the cause remanded "for such other and further proceedings as to law and justice shall appertain." This required an examination by the chancellor of the opinion in the earlier appeal. (*Freeman v. Equitable Life Assurance Society of the United States,* 304 Ill. App. 517.) This court, after considering the question involved in this former appeal said:

"After consideration of the questions involved, the contract which was executed by the plaintiff and the defendant creates no equitable lien on any of the policies for the reason that it is essential that the property be identified whereby the party promised to con-

vey, assign or transfer the property as provided for in the contract, and there being that uncertainty about it, it is our opinion that the court erred in entering the decree in question, and it is reversed, and the cause is remanded."

Upon remandment, defendants filed their written motion "to dismiss the within proceeding for want of equity, and in support thereof call the attention of the Chancellor to the opinion of the Appellate Court rendered in this proceeding." Defendants contend that it is apparent from the opinion that the grounds of reversal were not of a character to be obviated by subsequent amendments of the pleadings or by the introduction of additional evidence, and that it became the duty of the chancellor to dismiss the suit. This the chancellor ultimately did, but only after considering two proposed amendments to the amended complaint.

The question of real importance is whether the plaintiff's amended complaint aided by his proposed amendment failed to state a good cause of action. In the opening paragraph of plaintiff's proposed amendment, plaintiff undertakes to adopt and reallege all the allegations of the amended complaint theretofore filed and the amendments theretofore filed by his coplaintiff Eley as administrator. It is to be observed that plaintiff in his brief states that he is appealing from the order of February 5, 1941, striking the amendment theretofore filed by him on November 22, 1940. Defendants point out that his notice of appeal did not bring before this court the correctness of that order. However, we are inclined to consider the real question as to whether plaintiff's amended complaint aided by his proposed amendment stated a good cause of action. This court found in an earlier opinion in a former appeal in this case (304 Ill. App. 517) that plaintiff had failed to identify sufficiently the subject matter upon which to impose an equitable lien to

protect him against loss or threatened loss. In his proposed amendment plaintiff amplifies his allegation concerning his supposed loss, but makes no effort to cure his omission to identify the subject matter of the lien to make good such loss. In plaintiff's brief, an excerpt of the earlier opinion is quoted, which is incomplete and misleading. This court, in the former appeal, after finding that Walter W. Freeman never assumed any obligation toward plaintiff "other than to furnish him with security," said:

"This was an independent covenant, wholly distinct and separate from any relationship of debtor and creditor, which is one of the essential requisites of an equitable lien, and the defendants further suggest that no allegation will be found in the amended complaint and no proof will be found in the record that the joint venture even threatens to be unsuccessful or fail to return to Ernest E. Freeman his entire contribution thereto." As we have already indicated, we are of the opinion that the existence or nonexistence of a loss is unimportant in the light of the fact that there was no debtor and creditor relationship between plaintiff and Walter W. Freeman, which is one of the essential requisites of an equitable lien, and in view of plaintiff's failure to identify sufficiently the subject matter of his requested equitable lien. The amplification of plaintiff's allegation concerning his supposed loss fails to supply the deficiencies, which, in the earlier opinion, were held to be fatal to plaintiff's right to recover.

It is recited in the proposed amendment that Walter Freeman was not insurable and made no application for insurance between January 1, 1936 and the date of his death, but here again is a total absence of any allegation covering identification of the *res*. This fact was considered by this court on the former appeal. In defendants' answer it is recited that Walter Freeman had made application for insurance, which was

refused. On the former appeal it was contended by plaintiff that it was reasonable to suppose that Walter Freeman would have taken other insurance had plaintiff insisted upon it. Upon the question, this court said:

"In answer the defendants state that Walter W. Freeman after the execution of the contract had applied for insurance and had been rejected, so that being called to our attention, it is only an item of evidence tending to show the intention of Walter W. Freeman in regard to furnishing further insurance." The question of Walter Freeman's inability to obtain insurance was, therefore, before this court and considered in the earlier appeal, and was not regarded as important. While it might evidence an intention on the part of Walter Freeman to obtain insurance which might have resulted in benefiting plaintiff, still it was only an application for insurance, which was refused.

Another matter that might be considered of importance on this appeal is that certain allegations of questionable propriety were made by coplaintiff Eley, as administrator, in his amendment filed on November 22, 1940, which amendment was stricken on motion of defendants. Eley thereafter abandoned all further efforts, and plaintiff now weaves into his statement of facts and argument allegations made in Eley's stricken amendment which are no longer in this case.

Defendants submit that this cause has been decided on its merits on the first appeal; that the chancellor should have examined the court's opinion, entered an order of dismissal, and denied plaintiff any right to amend. However, we are of the opinion that the trial court was not in error in granting plaintiff the chance to amend. Having filed his amendment and offered his proposed amendment, which merely restated more elaborately facts which were before this court on the earlier appeal and made no effort to show a debtor and creditor relationship and sufficiently identify the

654

*res* upon which plaintiff seeks to impose an equitable lien, we are of the opinion that the trial court was not in error in striking plaintiff's amended complaint and in denying leave to file his proposed amendment. For the reasons stated, the order of the superior court, denying leave to file plaintiff's proposed amendment and dismissing the cause is affirmed.

*Affirmed.*

Burke, P. J., and Kiley, J., concur.