McINTYRE, Appellant, v. Cox and wife, and others, Respondents.

*No. 407. Submitted under sec. (Rule) 251.54 April 10, 1975.— Decided June 3, 1975.*
(Also reported in 229 N. W. 2d 613.)

598

For the appellant the cause was submitted on the brief of *William H. Freytag* of Elkhorn.

For the respondents the cause was submitted on the brief of *David Y. Collins* of Beloit and *Victor Moyer,* Rock county corporation counsel.

HEFFERNAN, J. This is an appeal from orders which sustained the demurrers of the defendants to the complaint.

The question posed herein is whether an agreement entered into between Louis F. McIntyre and his mother contemporaneously with the conveyance by Louis of his interest in the property to his mother, by quitclaim deed, created an equitable lien which could be enforced by Louis against subsequent purchases of the parcel from the mother.

We conclude that no lien was created and the only possible remedy that Louis might pursue is against the estate of his now deceased mother for breach of the contract.

The facts show that in 1931 the property of Frank McIntyre descended, two thirds to his son Louis, the plaintiff in this action, and one third to his widow Anna, the mother of Louis.

On November 7, 1931, Louis conveyed his two-thirds interest to his mother by an unrestricted quitclaim deed.

On the same day, Anna McIntyre signed a witnessed declaration addressed to Louis, stating:

"On this 7th. day of November 1931. I accept from you two thirds of the Frank McIntyre estate by quick claim deed. The inhertance tax to be paid from the estate.
"It is understood that none of this property can be sold or given away without my son Louis McIntyre consent. If any of the property is sold it will be divided upon the ratio that the the two trirds was signed over to me. Upon my death the entired estate going back to my son Louis McINTYRE." [Sic]

While the complaint purports to give additional gloss to the meaning of this agreement, its effect must be determined as a matter of law. Accordingly, the plaintiff's statements in the complaint for the purpose of explaining the intent and purpose of the document are irrelevant to the central issue of this appeal.

The only issue on this appeal is whether that document executed by Anna McIntyre gave Louis McIntyre a lien on the property.

The quitclaim deed was recorded at or about the time it was executed. The agreement was never recorded as an instrument in the chain of title of the real estate conveyed by the quitclaim deed, but it was incorporated in an affidavit recorded thirty-seven years later, Feb-

ruary 3, 1969. It is claimed that this document was improperly recorded.

On February 10, 1969, Anna McIntyre Cassidy (she had remarried) sold the property to Robert B. and Doris G. Cox. That property was the real estate which was the subject of the 1931 quitclaim deed and the agreement. The transaction was financed by a purchase money mortgage and loan from the First National Bank & Trust Company of Beloit, Wisconsin.

Louis McIntyre claims that the agreement of 1931 gave him a lien on the property, which may be enforced against subsequent purchasers if they have either knowledge or constructive notice of his lien. He alleges that the property was not to be sold without his consent, and, if sold, he was, under the agreement, entitled to two thirds of the proceeds.

He claims that the affidavit filed in 1969, before the conveyance to the Coxes, was constructive notice of his lien. He alleges that the affidavit was incorrectly indexed by Murphy, the register of deeds, and if, because of Murphy's negligence, the purchasers did not have constructive notice, then the liability is upon Murphy.

He also alleges that the lawyer who represented the estate of Frank McIntyre, E. J. Caskey, knew of the agreement between Louis and his mother.

The attorney representing Robert and Doris Cox and the bank in the purchase transaction was Daniel Y. Collins, who had become a partner of Caskey. Plaintiff alleges that Caskey informed Collins of the 1931 agreement. Alternatively, whether the information was passed, Louis McIntyre alleges that the actual knowledge of Caskey must, in any case, be imputed to Collins, and because that knowledge was imputed to the attorney for the Coxes and the bank, actual knowledge must be imputed to them.

We find it unnecessary to rule on whether the purchasers had either constructive or actual knowledge of

the 1931 agreement. It was, at the most, a contract entered into between Anna and Louis McIntyre, enforceable, if at all, against her or her estate.

The trial judge held that the writing executed by Anna McIntyre did not create an equitable lien.

On appeal, McIntyre does not argue that any lien was specifically created by the agreement, but rather that a constructive trust resulted in his favor. Only generalizations are cited in support of his proposition.

While the law relied upon could be controlling in appropriate circumstances, it is irrelevant to the facts here and the law as it has been decided in Wisconsin.

Under accepted Wisconsin law, a constructive trust will be implied to avoid unjust enrichment. McIntyre alleges no facts that would lead to the conclusion that the Coxes or the bank have been unjustly enriched. *See: Richards v. Richards* (1973), 58 Wis. 2d 290, 298, 206 N. W. 2d 134; 5 Scott, *Trusts* (3d ed.), p. 3417, sec. 462.2; Restatement, *Restitution,* p. 640, sec. 160. It is apparent from these citations that a constructive trust can only be impressed upon property in the hands of third parties if the third party is unjustly enriched. Certainly, neither the Coxes nor the bank gave less than full payment for their interest.

In any event, the writing executed by Anna McIntyre in 1931 gave Louis only a right in the proceeds upon sale. The proceeds, however, went to Anna McIntyre Cassidy or to her estate. If there was unjust enrichment, it inured to Anna McIntyre Cassidy, not to the purchasers from her.

Nor was there an equitable lien upon the property. Equitable lien is defined in Restatement, *Restitution,* p. 650, sec. 161:

"Where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises."

The essential elements of an equitable lien were stated in *Marshall Savings & Loan Asso. v. Chicago Nat. Bank* (1965), 56 Ill. App. 2d 372, 378, 206 N. E. 2d 117:

"The essential elements of equitable liens include (1) a debt, duty or obligation owing by one person to another. Watson v. Hobson, 401 Ill 191, 81 NE 2d 885 [7 A. L. R. 2d 1156], and (2) a res to which that obligation fastens, which can be identified or described with reasonable certainty. Freeman v. Freeman, 314 Ill App 641, 42 NE 2d 315; Hazenwinkle Grain Co. v. McComb, 116 Ill App 541."

An equitable lien creates a security interest in the land. In *Bartholomew v. Thieding* (1937), 225 Wis. 135, 137, 138, 273 N. W. 468, the court acknowledged the creation of the security interest when it said, "[E]quitable liens arise from written contracts showing an intention to charge some particular property with the payment of a debt."

When considering contracts to determine whether the parties intended to create the security, the court applies the rule:

"[E]quity will treat that as done which under the circumstances the parties had in mind and which in good conscience ought to have been done." *Luedtke v. Luedtke* (1923), 181 Wis. 471, 483, 195 N. W. 382.

Under these stated rules, Louis McIntyre had an equitable lien on the real estate when it was owned by his mother only if the 1931 agreement recited that Louis had a security interest in the property to cover the payment of a debt or obligation.

Under the agreement, no debt was owed Louis until the property is sold. Without a debt, the parties did not intend a security interest. Without the debt or obligation and without an intention to create a security interest, there can be no equitable lien. Under the rule of the Restatement, there could be no claim that Anna

McIntyre was unjustly enriched until after she sold the property. By then it would be too late for an equitable lien to attach to the real estate. There being no equitable lien in Louis McIntyre's favor, he has no interest in the real estate that can be prior to the interest of the Coxes or the bank.

Under an equitable lien theory, if there were no lien on the property initially, it would not become subject to a lien subsequently, even though the eventual purchaser had knowledge of what Louis McIntyre thought the effect of the agreement to be.

While knowledge on the part of the Coxes and the bank is alleged, the allegation is one of law, *i.e.,* the knowledge is only by imputation because a former partner of the lawyer conducting the transaction had actual knowledge. We decline to give validity to this far-fetched imputation and conclude that knowledge will not be imputed as a matter of law under these circumstances.

It should also be noted that, if no lien was created by the agreement, the failure of the register of deeds to properly record an instrument is *damnum absque injuria.* Even though the agreement were properly recorded and indexed, it did not give constructive notice of a lien, for none was created by the instrument.

Since we hold that no constructive trust arises, and no equitable lien was created that could bind subsequent transferees, it is unnecessary to consider other questions raised on the appeal.

The trial judge correctly stated:

"[The] plaintiff did not retain any interest in the land, but only an interest in the proceeds. . . . Plaintiff's only cause of action would appear to be against the estate of Anna McIntyre for breach of contract."

*By the Court.*—Orders affirmed.