In re Bradley Alan KIRCHNER and Jaime Lynn Kirchner, Debtors.

Michael E. Kepler, Trustee, Plaintiff,

v.

Lisa A. Koch, Tina M. Bechtel, Alan E. Kirchner, Alex J. Kirchner, and Michael E. Dietz, Trustee, Defendants.

Bankruptcy No. 05–14404.
Adversary No. 06–39.

United States Bankruptcy Court,
W.D. Wisconsin.

March 9, 2007.

Timothy J. Peyton, Madison, WI, for Plaintiff.

Galen W. Pittman, La Crosse, WI, for Defendants.

MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ROBERT D. MARTIN, Bankruptcy Judge.

## I. BACKGROUND

The defendants are siblings of chapter 7 debtor Bradley Kirchner. In 1998, Bradley "bought" his (and the defendants') parents' house at a foreclosure sale. At the time, the parents, Alan and Sandra Kirchner, were debtors in a chapter 13 case in this Court. They provided funds from their retirement accounts—exempt from attachment under Wisconsin law—to repurchase their home at the sale, but did so in Bradley's name. They were purportedly concerned that the foreclosed mortgage could still apply to them if they repurchased the house in their own names.

On November 9, 2001, Bradley conveyed the house to the defendants for no consideration. He says he took this step so that he and his now ex-wife Jaime [1] could take out a first-time-homeowner mortgage on a different property. He has attempted to obtain documentation of that mortgage application, but to date has been unable to do so.

The chapter 7 trustee, Michael E. Kepler, filed this adversary proceeding on January 13, 2006, seeking to avoid the conveyance from Bradley to the defendants as a fraudulent transfer under chapter 242 of the Wisconsin Statutes, the Uniform Fraudulent Transfer Act (UFTA), made available to the trustee by 11 U.S.C. § 544(b). Following discovery, the trustee

1. Bradley and Jaime married between the foreclosure sale and the conveyance to the defendants. For simplicity I refer to the real estate as Bradley's separate property, not community property. Although Jaime's name was on the deed by which Bradley conveyed the real estate to the defendants, I assume—again, for simplicity—that their attorney put her name on the deed only for commercial certainty.

moved for summary judgment on January 23, 2007.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (2007), *incorporated by* Fed. R. Bankr.P. 7056. "All facts and reasonable inferences must be construed in the light most favorable to . . . the non-moving party." *Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir.2007).

There are two ways to meet the burden borne by the party moving for summary judgment. The classic way is to show that the undisputed facts entitle the movant to judgment as a matter of law. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The more "modern"[2] method is "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the movant is relying on this second method of obtaining summary judgment, under the "substantial evidence standard," the movant must show that the nonmovant has insufficient evidence to survive summary judgment. Then the burden shifts to the nonmovant to present such evidence.

Subpart (e) of Rule 56 sets forth the substantial evidence standard.

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). The rule's requirement that affidavits be made based on personal knowledge "parallels Rule 602 of the Federal Rules of Evidence, which forbids a witness (other than an expert witness . . .) to testify to matters of which he does not have personal knowledge." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir.1989). "Personal knowledge within the meaning of these rules includes . . . inferences from sense data as well as the sense data themselves (all knowledge is inferential—including sense data)." *Id.*

## III. FRAUDULENT CONVEYANCE

■ Section 544(b)(1) of the Bankruptcy Code permits a trustee to

---

**2.** *See also* 2 Moore's Manual: Federal Practice & Procedure § 17.23[3][b] ("the modern view is that summary judgment may be appropriate even if material facts are contested when the nonmovant fails to provide substantial evidence of such contested facts") (citing *Celotex*).

avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1) (2004).[3]

The applicable law in this instance is Wisconsin's version of the UFTA. It provides, in part:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Wis. Stat. § 242.05(1) (2001) (same in 2005). Read together, these two statutes permit a trustee to avoid a pre-petition transfer of property if: (1) the debtor had an unsecured creditor at the time of the transfer who was still an unsecured creditor at the time of the bankruptcy filing; (2) the debtor did not receive a reasonably equivalent value in exchange for the transfer; (3) the debtor transferred an interest that the debtor had in property; and (4) the debtor was insolvent at the time of (or was rendered insolvent by) the transfer.

The parties effectively concede that the first two elements of the trustee's cause of action are met. The defendants do not dispute that Bradley had at least one unsecured creditor at the time of the transfer that remained a creditor until his bankruptcy filing. While the defendants allege

that they lack knowledge as to whether Bradley received reasonably equivalent value for the transfer to them, the trustee has shown that there was no consideration for the transfer and the defendants have provided no evidence to the contrary.

There is no factual dispute as to the third element. Bradley possessed legal title to the house. He held it for the benefit of Alan, Sandra, and their minor son. He purchased it at the foreclosure sale with Alan and Sandra's retirement funds. The parties only disagree on the legal significance of Alan and Sandra's repurchase of their home in Bradley's name.

■ Beyond "invalidating certain security interests as fraudulent, or as improper preferences over general creditors ... Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136, 141 (1979). In Wisconsin,

deeds, like other instruments, should be construed so as to arrive at the intention of the parties. If there is no ambiguity, this must be arrived at from the language used, and effect should be given to all of the provisions, if that is possible without doing violence to the language used.

*Giese v. Giese*, 242 Wis. 581, 584, 9 N.W.2d 67 (1943). The foreclosure deed unambiguously identifies the buyer as Bradley A. Kirchner. Sheriff's Deed No. 257951, May 26, 1998, Aff. of Timothy J. Peyton, Ex. A–1. The 2001 quit claim deed likewise unambiguously identifies the grantors as Jaime and Bradley A. Kirchner. Quit Claim Deed, Nov. 9, 2001, Aff. of Timothy J.

**3.** Because Bradley and Jaime filed their chapter 7 before the 2005 amendments to the Bankruptcy Code took effect, the pre–2005 version of the Code—identical in all relevant respects to the post–2005 version—applies in this adversary proceeding.

Peyton, Ex. A–2. Barring a showing that Bradley was holding the real property in trust for his parents, this Court must give meaning to the clear language of the deeds.

The defendants, however, shy away from claiming that Bradley was holding the property in trust for Alan and Sandra. Understandably so. There is no trust instrument. And, "[i]f title to property is transferred to one person and all or part of the purchase price is furnished by another, the latter may not enforce a purchase money resulting trust." Wis. Stat. § 701.04(1) (2006). While the Wisconsin Statutes preserve the "right to enforce a valid express trust or to establish a constructive trust based on fraud, undue influence, breach of confidential relationship or other appropriate grounds," § 701.04(3), no party contends that these exceptions apply.

 Instead, the defendants argue that their parents hold an "equitable lien" in the real property. "Where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises." *McIntyre v. Cox,* 68 Wis.2d 597, 601, 229 N.W.2d 613 (1975) (citing Restatement (First) Restitution § 161, at 650).

> The essential elements of an equitable lien are (1) a benefit conferred upon the defendant by the plaintiff, (2) an appreciation or knowledge by the defendant of the benefit, (3) acceptance or retention by the defendant of the benefit under circumstances making it inequitable for the defendant to retain the benefit, and (4) a specific *res* to which the lien can attach which can be identified or described with reasonable certainty.

*Mumm v. Adametz (In re Adametz),* 53 B.R. 299, 306 (Bankr.W.D.Wis.1985) (citing *Puttkammer v. Minth,* 83 Wis.2d 686, 689, 266 N.W.2d 361 (1978) and *McIntyre,* 68 Wis.2d at 602, 229 N.W.2d 613). Because "[a]n equitable lien relates back to the time it was created by the conduct of the parties," *Adametz,* 53 B.R. at 307, under the defendants' theory, their parents would have a first priority security interest in the property to the extent of the funds they provided.

██ The defendants' argument fails, though, because the purpose of an equitable lien is to prevent unjust enrichment. *S & M Rotogravure Serv., Inc. v. Baer,* 77 Wis.2d 454, 460, 252 N.W.2d 913 (1977) (declining to impose equitable lien where elements of unjust enrichment not met); *McIntyre,* 68 Wis.2d at 601, 229 N.W.2d 613; *see In re Bailey,* 20 B.R. 906, 910–11 (Bankr.W.D.Wis.1982) (the only difference between equitable lien and constructive trust ex maleficio is that one is a security interest while the other is an ownership interest). Even if receiving bare legal title for no consideration is a benefit, the undisputed facts show no circumstances that would make it inequitable for Alan and Sandra's children to retain that benefit. Alan and Sandra funded the purchase of the property in their son's name with the understanding that he would do precisely what he has with the property. The defendants do not contend that it was inequitable for Bradley to hold title to the property. To the contrary, to assert an equitable lien against Bradley they must allege one against themselves too! The only supposed inequity in this case is that Bradley's creditors can now reach the property due to the method that the Kirchner family selected to protect Alan and Sandra. That does not constitute unjust enrichment.

In finding that as a matter of law, Bradley had an interest in the undivided whole of the property, I recognize that I am

disagreeing with *Swanson v. Stoffregen (In re Stoffregen)*, 206 B.R. 939 (Bankr. E.D.Wis.1997), on which the defendants rely. On similar facts, that court held that the debtor had not transferred an interest in property and, alternatively, that the facts justified imposing an equitable lien in favor of the debtor's parents, the transferors.

*Stoffregen* adopted the definition of ownership found in a long line of tax exemption cases—an adoption the defendants urge this Court to follow. Aff. of Galen W. Pittman, at ¶ 3. To determine ownership under Wisconsin's tax exemption statutes, courts typically look beyond the form of a transaction to determine which party enjoys the benefits of ownership. For example, section 70.11 of the Wisconsin Statutes provides that "property exempted from general property taxes is: (2) ... [p]roperty owned by any county, city, village, town, school district," etc. "Owned" in this context means "[b]*eneficial* ownership ... not mere technical title." *Wall v. Wis. Dep't of Revenue*, 157 Wis.2d 1, 8, 458 N.W.2d 814 (Ct.App.1990). In *Mitchell Aero v. Milwaukee*, the state supreme court surveyed a number of cases and concluded that "the tax exemption cases seem to be consistent in construing 'owned' as meaning something substantially more in the way of enjoyment or the possession of other indicia of ownership than bare or paper title." *Mitchell Aero, Inc. v. City of Milwaukee*, 42 Wis.2d 656, 660, 168 N.W.2d 183 (1969).

But it is state property law, not state tax law, that should determine who has rights in property of a bankruptcy estate. In tax exemption cases, ownership exists when it is "clear [that] land was held for the benefit of" a state or local government, irrespective of the name on the deed. *Mitchell Aero*, 42 Wis.2d at 660, 168 N.W.2d 183. And in tax exemption cases that holding

makes sense. The taxing authorities are interested in documents of conveyance only insofar as such documents accurately identify the owner of the beneficial interest in the property. *Am. Motors Corp. v. City of Kenosha*, 274 Wis. 315, 320, 80 N.W.2d 363 (1957).

In the law of real property, however, the words on the deed are critical. *Rikkers v. Ryan*, 76 Wis.2d 185, 188, 251 N.W.2d 25 (1977) ("where a deed is susceptible to only one interpretation, extrinsic evidence may not be referred to in order to show the intent of the parties"). Property law reaches a different conclusion from tax law because the two systems address wholly different concerns. The law of conveyancing and recording seeks to ensure that "[t]hird parties, be they prospective buyers or creditors ... can rely upon the face of the deed." *Dubis v. Zarins (In re Teranis)*, 128 F.3d 469, 472 (7th Cir.1997) (applying Wisconsin law).

The reason for distinguishing tax cases is advanced by *Mitchell Aero* itself, which limited its holding to ownership for purposes of tax exemption. *Mitchell Aero*, 42 Wis.2d at 660–62, 168 N.W.2d 183 ("for the purposes of tax exemption in favor of the state," "proper meaning of 'owned' in tax exemption statutes," "beneficial-ownership test for tax exemption," "Analogous cases construing the word 'owned' in other tax exempt statutes"). It even distinguished cases that "stressed form [over substance] in dummy corporation cases to permit internal state improvements and avoid the state debt limit." *Id.* at 660, 168 N.W.2d 183; *see, e.g., Herro v. Wis. Fed. Surplus Property Dev. Corp.*, 42 Wis.2d 87, 112, 166 N.W.2d 433 (1969); *State ex rel. Thomson v. Giessel*, 271 Wis. 15, 72 N.W.2d 577 (1955); *State ex rel. Thomson v. Giessel*, 267 Wis. 331, 65 N.W.2d 529 (1954); *State ex rel. Thomson v. Giessel*, 265 Wis. 185, 60 N.W.2d 873 (1953); *State*

*ex rel. Wis. Univ. Bldg. Corp. v. Bareis,* 257 Wis. 497, 44 N.W.2d 259 (1950). The principles at stake in the tax exemption cases are fundamentally at odds with those that property law seeks to promote.

■ The policy behind conveyancing law fits squarely with the trustee's UFTA cause of action, which can be brought only if the transferor (here Bradley) had creditors at the time of the transfer. Had such a creditor examined Bradley's assets, it would have found the recorded deed from the foreclosure sale and concluded that Bradley owned the property—a conclusion upon which it could rely. The integrity of the state's deed recording system is nearly sacrosanct under the law of real property. Where a deed is unambiguous, it is conclusive proof of ownership. *See Teranis,* 128 F.3d at 471–72 (finding that a 19th-century exception to this rule, where unambiguous deed creates only a rebuttable presumption of ownership, is limited to married cotenants and cannot be used even where cotenants are mother and daughter).

■ I also depart from the reasoning in *Stoffregen* that equity required a lien on the debtor's interest in the property. "The fact that a person has received or obtained a benefit without paying for it does not of itself establish that the recipient has been unjustly enriched." Restatement (Third) Restitution & Unjust Enrichment § 2(3) (Draft 2000). The case at bar is a good example. The parties did not expect Bradley to pay for the benefit he retained. It was part of their plan that he would be the owner of the property. That plan had some attendant risks. But the parties knowingly and intentionally assumed those risks. That Bradley's creditors may now access some of the value of the property conferred upon him by his parents may evoke generalized notions of unfairness, but it does not constitute unjust enrichment.

■ There is a dispute as to material facts on the fourth element of the trustee's cause of action, but the defendants have not demonstrated that the dispute is genuine. A transfer is only avoidable as fraudulent to present creditors if "the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Wis. Stat. § 242.05(1). Under Wisconsin's UFTA, "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." Wis. Stat. § 242.02(2).

"Asset" means property of a debtor, but does not include any of the following:

(a) Property to the extent it is encumbered by a valid lien.

(b) Property to the extent it is generally exempt [from execution] under non-bankruptcy law.

(bm) Property to the extent it is exempt under § 815.18.

Wis. Stat. § 242.01(2).

To calculate insolvency, the trustee traced Bradley and Jaime's 2005 assets and liabilities (as detailed on their bankruptcy schedules) back to the date of the transfer, November 9, 2001. At Bradley's deposition, the trustee asked whether he and Jaime had acquired or divested any significant assets or liabilities between the conveyance and the petition date.

Q. Between 2001 and the date that you filed did you dispose of any major assets?

A. Nothing that was of much value.

... Q. What personal property would you have owned in November of 2001 that you did not own when you filed your bankruptcy?

A. We had owned two different cars. One was a Mercury Sable, a station wagon, and another one was a Dodge Daytona. Both cars were

older cars, and that's why I said that they weren't worth much at the end when we got rid of them. It was in the end of—it was in 2002 that we got rid of them just because they were broke down. They had some problems with them.

Q. So in November of 2001 the Mercury Sable, what do you think that would have been worth approximately at that time?

A. Probably between 800 and 1,200.

Q. How about the Dodge Daytona?

A. I would say probably about 800.

Q. Then the rest of your personal property would have been substantially the same as what you had in 2005?

A. It wouldn't have been worth as much. It would have been worth more in 2001 than what it was in 2005.

Q. The value would have been more, but it's pretty much the same property, right?

A. Pretty much, yes.

Transcr. of Deposition of Bradley A. Kirchner at 18–21 (Dec. 7, 2006). The trustee also established at that deposition that Bradley owned no real property other than the parcel in question here. *Id.* at 17.

The defendants' affidavits in opposition fall short of what is needed to avoid summary judgment. They lack any concrete supporting evidence. The defendants offer three affidavits: by their attorney, Galen Pittman, who represented Bradley in the 1998 foreclosure sale purchase; by Alan L. Kirchner, the father; and by Bradley himself. The affidavits of Pittman and Bradley state without other evidence that Bradley and Jaime were solvent on November 9, 2001. Pittman affies:

an analysis of the Attachment A and, the Bankruptcy Schedules (Attachment C)

clearly show that Bradley Kirchner was solvent at the time of the transfer on November 9, 2001. The burden of proving insolvency rests with the creditor (Trustee Kepler) and the deposition has not shown/proven any insolvency, just to the opposite, its [sic] showing solvency. Even applying the stringent provisions of Wisconsin Statute 242.05 (which is simply a fraudulent transfer action requiring no intent), and applying liquidated values thereto based upon the deposition and information furnished by Bradley Kirchner, and applying the exemptions under the Wisconsin Exemptions 815.18, there is a showing that Bradley Kirchner was solvent at the time of the transaction. The attempt by the Trustee in the deposition to prove obligations prove [sic] futile at best and the deposition clearly show [sic] solvency. The obligation which if they were in existence on or about Nov. 9, 2001 have not identified amounts other than were substantially less than the figures quoted by the Trustee. [Sic.] This attempt to prove insolvency meets no standard of evidence even in the wildest imagination. (See Attachment D.)

Affidavit of Galen W. Pittman at ¶ 4.

Far from showing solvency, however, Pittman's attachments support the trustee's legal arguments. Attachment D purports to be a "solvency test" as of November 9, 2001. It calculates, apparently correctly, $9,305.00 in total assets. It claims that only $2,055.00 worth of those assets would not have been exempt from execution at that time under the Wisconsin exemptions. But that exaggerates the nonexempt value. Pittman applied the $1,200 motor vehicle exemption (Wis.Stat. § 815.18(3)(g)) to a car in which Bradley had only $1,000 worth of equity, without applying the remaining $200.00 to two other nonexempt cars. More importantly,

Bradley used only $2,970 of the $5,000 household goods exemption, the balance of which Pittman could have applied to the remaining equity in the motor vehicles. *See* § 815.18(3)(g). These changes would wipe out all of the value in nonexempt property that Bradley claims he had in 2001. Subtracting the $1,300 in debts Pittman lists—already an underestimate due to three creditors whose balances Pittman lists as "unknown"—puts the debtor $1,300 underwater, even using Pittman's figures.

For Bradley's part, he states that he has acted diligently to reconstruct his finances as of November 9, 2001, and "firmly believe[s] that [he] and [his] ex-wife Jaime Kirchner were solvent at that time." Affidavit of Bradley A. Kirchner at ¶ 7. He provides no further details. On summary judgment, the Court must accept this belief as credible. However, Bradley states no grounds for this opinion; it was not an inference from data. *See Palucki,* 879 F.2d at 1572. Thus only the subjective belief was within his personal opinion, and all the Court accepts as credible is that Bradley believed he was solvent.

I therefore find no genuine dispute that Bradley had an unsecured creditor at the time of the transfer, that he did not receive reasonably equivalent value in exchange for the transfer, that he transferred an interest of his in property, and that the transfer either was made while he was insolvent or rendered him insolvent. An order may be entered granting the trustee's motion for summary judgment.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The plaintiff having moved for summary judgment on the Complaint brought under 11 U.S.C. § 544(b), on the findings of fact and conclusions of law contained in the memorandum decision filed this date,

IT IS HEREBY ORDERED that the plaintiff's motion for summary judgment is granted.