In re John W. TERRY and Bertha Terry, Debtors.

John W. TERRY and Bertha Terry, Plaintiffs,

v.

Harris JOHNSON, Attorneys Samster, Aiken, Peckerman, Swartz & Mawicke, S.C.; Attorney Paul J. Scoptur, individually; Attorney Mark Swartz, individually; Attorney James R. Clark, as Chairperson for the State of Wisconsin Supreme Court Patient Compensation Panel, Defendants.

Bankruptcy No. 79–02050.
Adv. No. 81–0591.

United States Bankruptcy Court,
E. D. Wisconsin.

July 16, 1981.

Clifton G. Owens, Wilson, Broadnax & Owens, Milwaukee, Wis., for plaintiffs-debtors.

Paul J. Scoptur, Milwaukee, Wis., for defendants.

## DECISION

D. E. IHLENFELDT, Bankruptcy Judge.

The debtor, a medical doctor, filed his chapter 13 petition on October 29, 1979. Without objection from creditors or the trustee, and due to circumstances generally beyond the control of the debtor, the case continued on until March 31, 1981 when an order of confirmation was finally entered.[1]

---

1. For example, the debtor had substantial contingent tax liabilities. His proposed plan, the best his circumstances would allow, could not comply with the strictures of section 1322(a)(2), if he were in fact compelled to pay these tax claims in full. It was anticipated they would be paid out of the assets in a related hospital bankruptcy case, as eventually they were. In addition, the debtor became so seriously ill at one point that it was questionable whether he could continue with his work. In the interim, while the trustee and debtor's attorney were attempting to formulate such revisions in the plan as needed to meet the requirements of the Code, the debtor continued to make regular monthly payments as proposed in

On June 15, 1981, debtor filed this adversary proceeding asking that the defendants be specifically restrained from continuing the prosecution of a malpractice claim under chapter 655 of the Wisconsin statutes, and that defendants' attorneys be found in contempt for having violated the automatic stay provisions of section 362(a) of the Bankruptcy Code. Harris Johnson, one of the defendants, thereafter filed a pleading in the nature of a counterclaim requesting the court to vacate the stay imposed by section 362. The case came on for trial on July 7, 1981.

The Wisconsin legislature enacted chapter 655 during the so-called medical malpractice crisis of 1975.[2] It creates formal and informal patient compensation panels composed of physicians or others from the field of health care, attorneys and lay persons, and requires that medical malpractice claimants first submit their claims to such a panel before being permitted to commence an action for trial in the state courts. The panel conducts a hearing and functions much the same as a court. Proof is made by oral testimony, deposition or interrogatories, and the panel has the power to subpoena witnesses, order physical examinations, and require the production of written materials.

On March 11, 1981, Harris Johnson filed a "Submission of Controversy" with the administrator of the patient compensation panel system, listing the debtor, another doctor, and a hospital as respondent "health care providers", with a third doctor respondent being added later. Johnson's claim is based upon alleged medical malpractice occurring in December, 1978, in that a vasectomy was not performed correctly, and that he subsequently fathered a child—what has been referred to as a "wrongful life" action. Since neither Johnson nor the debtor were aware that such claim existed in October,

1979 when the chapter 13 petition was filed, Johnson was not listed as a creditor in the schedules filed by the debtor.

The patient compensation panel which Johnson invoked, after hearing all of the evidence, makes findings of fact as to negligence and causality, assesses the percentages of responsibility as between the parties, claimants as well as respondents, and issues an award. The findings and award were described to the court as being similar to a special jury verdict. Parties may stipulate to be bound by the panel's determination. Absent such stipulation, any party may within 120 days commence a court action in which the findings and order of a formal panel (but not those of an informal panel) are admissible. By the filing of a stipulation or the failure of a party to commence a timely action, the findings, order and award of a panel become binding on all parties, and any party may then file a certified copy of the order containing the award with a county or circuit court, which court renders judgment in accordance with the award.

■ No testimony was offered by either side at the trial on July 7, 1981, the parties relying instead on statements of counsel. The only material issue of fact in any event concerned whether or not Johnson's attorney had knowingly and deliberately violated the automatic stay provisions of section 362 by commencing the medical malpractice proceeding under chapter 655. There is no doubt that such action was stayed by sections 362(a)(1) and (6). *In re Seafarer Fiberglass Yachts, Inc.,* (Bkrtcy. ED, NY, 1979) 1 B.R. 358. Johnson's attorney pleaded his lack of experience in bankruptcy matters and indicated he had not known about section 362, relying instead on Bankruptcy Rule 401(c) in his belief that the stay as to Johnson had been annulled.[3] This

his initial plan. As finally confirmed, the plan provides for a 10% payment to unsecured creditors.

**2.** See "Medical Malpractice Panels: The Wisconsin Approach" by Jeffrey L. Kravat in 61 Marquette Law Review 55 (Fall, 1977) for a

clear and comprehensive description of the law, its background and procedures.

**3.** "Rule 401. Petition as Automatic Stay of Certain Actions on Unsecured Debts. . . .

(c) *Annulment of Stay.* At the expiration of 30 days after the first date set for the first

position was challenged by debtor's counsel, who stated he had given notice on a number of occasions that actions taken on behalf of Johnson were stayed. From the presentations made, the court believes that Johnson's attorney did not deliberately flaunt the jurisdiction of this court so as to justify the imposition of a substantial penalty, but that he did treat the matter too casually after having been cautioned by opposing counsel.

■ When asked what action the court should take for the violation of section 362(a), debtor's counsel said the court should continue the stay and deny Johnson's request that it be vacated. This, however, would be punishing Johnson for the sins of his counsel. There is no suggestion whatever that Johnson had knowledge of the foregoing events, or himself violated the statute. Furthermore, in a civil contempt proceeding such as this, the sanctions ought to be remedial rather than punitive. *In re Reed* (Bkrtcy. Utah, 1981) 11 B.R. 258, 7 B.C.D. 777. The court is satisfied there was no intent by Johnson's counsel to harass the debtor or to circumvent this court. Other than necessitating commencement of these proceedings by the debtor to enforce the stay, no harm has been done, particularly in view of the court's decision that the stay should be vacated. Under all of the circumstances, the court believes Johnson's attorney should be assessed the sum of $100 as costs. Said sum shall be paid to debtor and his counsel within 30 days from the date of this opinion.

Debtor's counsel pleaded that the stay not be lifted, or if the panel proceedings be permitted to continue with the debtor taking part, it should be as a witness and not as a party. It would be expensive for the debtor to defend in the chapter 655 proceedings. His resources had been stretched

thin, and his liability should be determined in bankruptcy court where it could be done at much less expense, and where the debtor might even be able to arrange a consent judgment. The debtor did not have malpractice insurance and would be forced to personally stand the expense of defending against the claim.

Johnson's attorney responded that the bankruptcy court was not in a position to decide fully the merits of the action. It cannot apportion and assess damages with respect to all of the parties. To grant the debtor's request would necessitate two separate trials with concomitant expense for the debtor as well as the other parties. Further, the debtor is a necessary and indispensable party to the chapter 655 proceeding in order for the panel to perform in accordance with the statute. The panel cannot make a full and fair apportionment of the responsibility of the respondents without him as a party.[4]

Section 362(d)(1) of the Code states:

§ 362 Automatic stay.

· · · · ·

(d) On request of a party in interest and after notice and a hearing, the court *shall* grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) *for cause*, including the lack of adequate protection of an interest in property of such party in interest; or
(Emphasis added).

Section 362(g) in turn provides that in opposing relief from the stay, the debtor must bear the burden of proof, the automatic stay being intended only to shift the initiative to the creditor to bring the issue before the bankruptcy court, and not to create any new right in the debtor to stay proceedings.

---

meeting of creditors, the stay provided by this rule shall be deemed annulled as against any creditor whose debt has not been duly scheduled and who has not filed his claim by that time." (Rule 401(c) is incompatible with the Code, being superseded by § 362(c).)

**4.** Counsel for Johnson stipulated that no claim would be made against the debtor in any event. They were aware that the debtor was probably uncollectible, and were interested in pursuing the claim against the other respondents. Such stipulation, however, would not prevent the other respondents from seeking contribution from the debtor later on.

"Automatic Stays Under the New Bankruptcy Law" by Professor Frank R. Kennedy, 12 Mich.L.Rev. 1, 63 (1978).

 As noted above, the statute mandates that the court *shall* vacate or modify the stay for cause. "The facts of each request will determine whether relief is appropriate under the circumstances." H.R. Rep.No.95–595, 95th Cong., 1st Sess. 344, U.S.Code Cong. & Admin.News 1978, 5787. In determining whether to continue the stay, "(T)he court is to exercise the power ... according to the particular circumstances of the case and is to be guided by considerations that under the law make for the ascertainment of what is just to the claimants, the debtor and the estate." *Foust v. Munson Steamship Lines*, 299 U.S. 77, 83, 57 S.Ct. 90, 81 L.Ed. 49 (1936). In the case at bar, considering all of the facts and circumstances, the court believes the stay ought to be vacated and the patient compensation panel permitted to continue with its proceedings.

In argument, debtor's counsel dwelt almost exclusively upon the costs which the debtor would sustain in defending against Johnson's claim, and inferentially, the adverse effect this would have on his ability to carry out the plan.[5] Had the debtor carried malpractice insurance with the insurance company standing by to defend him, the stay would be vacated with little further discussion. 2 Collier on Bankruptcy (15th ed.) 362–51. Since he did not, the cost of defending is unquestionably a factor to be given serious consideration.

Why the debtor presumes it would be cheaper to resolve the dispute in bankruptcy court was not spelled out at the hearing, but one may assume it is in reliance on section 502(c) of the Bankruptcy Code, which authorizes this court to estimate any contingent and unliquidated claim, and also the fact that the other respondents would presumably be participating here only as witnesses—not as parties. If claims are to be estimated, however, the court would be compelled to estimate not only Johnson's claim, but also all those of the other respondents for contribution from the debtor. In other words, Johnson is not the only one with a contingent unliquidated claim against the debtor.

Debtor's counsel was not entirely clear in specifying just how the various potential claims were to be resolved. The alternatives to permitting the debtor to participate as a party before the panel would seem to be (a) a bifurcated trial with the parties repeating the evidence in two forums, or (b) having the rights of all of the parties decided in the bankruptcy court.

Having a bifurcated trial might save the debtor some expense, particularly if the bankruptcy court "estimated" the various claims by some type of curtailed procedure, but it would almost certainly cost the other parties substantially more. While the other respondents may be able to sustain such added expense, there is no indication that the claimant, Johnson, is any better off financially than the debtor. Furthermore, the rights of Johnson and the other respondents, as between themselves, could not be fairly determined by such a foreshortened proceeding.

The second alternative, having the bankruptcy court decide the entire controversy, is less than satisfactory. The claimant is interested in recovering damages from the other respondents, not from the debtor. They in turn are insured or financially responsible and will want to present a full and thoroughgoing defense. Anything less

---

5. Little attempt was made to ascertain or evaluate the factors and facts bearing upon the question of continuing or vacating the stay. For example, the expenses which debtor would incur in defending were argued at length. The court does not doubt debtor is in financial straits, but no factual presentation was made showing his inability to meet such expense, or that Johnson was in any better position. The two cases cited by the debtor were not helpful.

The case of *Bank of Rothville v. Zaleuke*, (Mo. 1927), 221 Mo.App. 1051, 295 S.W. 520, holds that a state court collection action on notes is stayed when the defendant files bankruptcy. *Freeman v. Seligson, Trustee*, (D.C.Cir.1968), 405 F.2d 1326, deals with the trustee's right of discovery to maximize realization on liquidation of the estate and to this end to institute all necessary litigation.

than a plenary trial would be unfair to these other parties. In that case, the debtor would be caught up in exactly the same kind of trial as he would be before the panel. It is difficult to see how this would reduce his expense of defending.

It is debatable whether the bankruptcy court should bother involving itself in assessing the value of any of these claims. To begin with, there are not even any claims on file. Further, aside from the expense of defending against them, they can have no effect on the plan.[6] Johnson has already stipulated that he will make no claim against the debtor at any time. None of the other respondents have filed proofs of claim, and the six month period for filing claims provided by Chapter 13 Rule 13–302(e) has long since passed.[7] In reference to this section, Collier notes that the time limits fixed by this rule are to be strictly observed and may not be extended under Rule 906(b). 15 Collier on Bankruptcy (14th ed.) s. 13–302.08.

There are other substantial reasons why the stay should be vacated. In order to resolve a potential malpractice insurance crisis with attendant adverse effects on the availability of health care, the state legislature has provided a unique and comprehensive screening procedure for claims involving medical malpractice. To put it simply, continuing the stay in force would frustrate that legislative policy by preventing the patient compensation panel from effectively performing its function. In turn, this would have a substantial and damaging impact on the other parties by denying them the expertise of the panel members, and the other benefits and advantages of the screening process.

"Wrongful life" claims, such as Johnson's, have yet to be legally recognized in Wisconsin. See *Rieck v. Medical Protective Co.*, 64 Wis.2d 514, 219 N.W.2d 242 (1974) and *Dumer v. St. Michael's Hospital*, 69 Wis.2d 766, 233 N.W.2d 372 (1975). They raise serious public policy questions. Rather than have the bankruptcy court speculate on what action the State of Wisconsin might take, these questions ought to be presented and decided in the state courts in the first instance.

The stay will be vacated so as to permit the patient compensation panel to make its findings and award, but neither Johnson nor any other party to those proceedings may take any step to enforce such award against the debtor by seeking judgment in state court or otherwise.

---

6. Of far greater import to the plan is the potential damage to the debtor's reputation as a doctor. This could seriously affect his earning power and thus his ability to carry out the plan. The court knows of no way to protect against this possibility. Johnson is entitled to assert his claim in some fashion in some forum and have it decided, and he must do so soon. The statute of limitations will run out on his claim on December 3, 1981.

7. In the past, by agreement of the parties, it has been the practice in this court to permit late-filed or post-petition claims to be filed as "deferred claims" in chapter 13 cases. They do not affect the plan or the debtor's right to discharge, and are not themselves affected by the discharge. They receive payments only after the debtor has completed payments under the plan, and the debtor receives his discharge as to other claims, whether or not the deferred claims are paid.