In the Matter of Francis J. NEWMAN aka Frank J. Newman, Debtor.

Francis J. NEWMAN aka Frank J. Newman, Plaintiff,

v.

Delores Jeanette NEWMAN, Defendant.

Bankruptcy No. 80–1787.

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Oct. 14, 1981.

David W. Steen, Tampa, Fla., for plaintiff.

Marsha B. Wilson, New Port Richey, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS an adversary proceeding and the matter in controversy is the dischargeability, vel non, of certain obligations imposed by a final divorce decree on Francis J. Newman, a debtor, who now seeks relief under

Chapter 13 of the Bankruptcy Code; 11 U.S.C., § 1301 et seq.

The complaint, filed by the Debtor against Delores Jeanette Newman, his former wife (Defendant), seeks a determination that certain obligations imposed on him by a final decree of divorce to wit: the obligation to pay the expenses of his former marital home, i. e. mortgage payments, taxes, utility bills and maintenance and repairs, and car payments are not obligations for alimony and support, but are part of a property settlement and thus not within the exceptive provisions of § 523(a)(5) of the Bankruptcy Code and, therefore, they are released through the general discharge to be entered upon completion of this Chapter 13 case; § 1328 of the Bankruptcy Code.

The record as established at the final evidentiary hearing reveals the following:

The Debtor and the Defendant, Delores Jeannette Newman, his former wife, were married in 1969. This was the second marriage for both. At the time they married, the Debtor was the official court reporter for Pasco County. During the marriage she had no significant independent income, but acted as typist-transcriber for the Debtor. The Defendant has two children from her previous marriage, ages 17 and 15, respectively, and has two children from her marriage with the Debtor, ages 9 and 10, respectively.

Prior to 1976, the Debtor and the Defendant owned their marital residence as tenants by the entireties. The house was encumbered by a small mortgage with an approximate balance of $4,000. As the result of an Internal Revenue audit, the Debtor and Defendant were assessed a tax deficiency in the amount of $9,646.24 and the IRS filed a tax lien against the marital home in the same amount. The tax deficiency was due to the Defendant's failure to withhold income and unemployment taxes from the wages of a housekeeper employed by the couple during the tax year in question and also due to a recomputation of the Debtor's income tax liability. Although the parties filed a joint tax return for the tax year in question, it is without serious dispute that the Defendant had no independent income during the tax year in question. In order to satisfy this tax obligation, the parties refinanced the marital home by obtaining a new mortgage loan in the approximate amount of $13,000.

In December of 1977, the parties commenced a dissolution of marriage proceeding. As part of the proceeding they entered into an agreement entitled, "Property Settlement Agreement" on December 9, 1977. The Agreement which was approved by the Court and incorporated into the Judgment of Dissolution of Marriage entered the same day provided in pertinent parts as follows:

The Debtor was to pay during the minority of the children for their support and maintenance the sum of $30 per week. The marital home was to be retained by the parties as tenants in common with the stipulation that the Defendant shall have full use and occupancy of the premises until the youngest child reaches maturity or until the Defendant remarries, whichever occurs first. During the minority of the children the Debtor was to pay all the maintenance of the home, ad valorem taxes, insurance as well as the monthly mortgage payments. The Agreement also provided that the Defendant was to have the use and title to a 1977 Buick and that the Debtor was to pay the outstanding balance due on the automobile.

These two obligations, i. e. the obligation connected with the maintenance of the former marital home and the maintenance of the Buick automobile are the obligations which the Debtor seeks to be declared to be dischargeable obligations. The record further reveals that the Defendant's formal education is limited to a high school diploma; that she is apparently a skilled typist and is currently employed as secretary for the vice-president of a small private college earning $330 bi-weekly, with a bi-weekly take home pay of approximately $274. She also receives $100 a month child support from her first husband. The Debtor is no longer grossing $25,000 as he did in 1977 when he was employed as a court reporter.

He was until recently an instructor in a local college at an annual gross salary of $11,000 which in turn gave him $782 a month take home pay, but he is no longer employed by the college and is currently unemployed.

The evidence further reveals that the agreement makes no provision for any alimony payment (the topic was never discussed); that the Defendant never asked for any alimony, and because of an apparent bad experience connected with a previous divorce, the Debtor opposed the very idea and the Defendant, who was on friendly terms with the Debtor at that time, was satisfied that no alimony would be awarded. The record is devoid of any evidence that the Defendant had any special equity in the marital home. The monthly mortgage payment of the home is approximately $200, the payment on the Buick is $128 per month. It appears that since the fall of 1980, the car payments were made by the Defendant until recently but the car contract is now in default.

While it is evident that she needs transportation and there is no public transportation available in the area, she owns the car and she is liable to keep up the payments not necessarily on this automobile, but on a less expensive automobile. The children are within walking distance of the school, and except for a rare visit to doctors they are not in need of transportation.

These are the relevant facts as established at the final evidentiary hearing which this Court is called upon to apply the controlling legal principles. Prior to the enactment of the Bankruptcy Code, Bankruptcy Courts interpreted this particular exceptive provision of the Bankruptcy Act, § 17(a)(7), and looked to state law for the purpose of determining whether a debt arising out of a dissolution of marriage proceeding constitutes alimony, maintenance or support. *Nitz v. Nitz*, 568 F.2d 148 (10th Cir. 1977).

■ It is evident from the legislative history of the corresponding Section of the Code, § 523(a)(5), that this question is no longer determined with reference to any state law, but will be determined under the bankruptcy law. Thus, cases such as *In re Waller*, 494 F.2d 447 (6th Cir. 1974) and *Melichar v. Ost*, 445 F.Supp. 1162 (D.Md., 1977) are overruled and results reached in cases such as *Fife v. Fife*, 1 Utah 2d 281, 265 P.2d 642 (1952) is followed. H.R.Rep. No.95–595, supra at 364; S.Rep.No. 989, supra at 79, U.S.Code Cong. & Admin.News 1978, p. 5787. Accord 3 *Collier on Bankruptcy*, ¶ 523.15[1], at 523–108 (15th ed. 1979). See *Pauley v. Spong*, 3 B.R. 619, 1 CBC 3d 1104 (Bkrtcy.W.D.N.Y.1980); *Williams v. Gurley*, 3 B.R. 401, 6 Bankr.Ct.Dec. 341 (Bkrtcy.N.D.Ga.1980).

■ It is equally evident, and there is no change in the law, that courts will look to the substance of the agreement or the final decree dissolving the marriage rather than the label the parties elected to use or the court placed on the particular obligation. *In re Usher*, 442 F.Supp. 866 (N.D.Ga.1977).

■ The provision of the Code excepting from the overall protective provision of the general discharge obligation for alimony, maintenance or support of a wife or children continues the historical approach which always afforded to spouses or children some form of protection against future adversities which they face when the family unit is destroyed. The public policy behind this approach is clear and is based on the proposition that the former spouse rather than society should be responsible for the maintenance and support of members of the family unit which is destroyed through divorce. Factors which may be considered to characterize payments provided for in a divorce decree for purposes of determining dischargeability include whether the obligation terminates on the death or remarriage of the recipient or donor spouse, *Adler v. Nicholas*, 381 F.2d 168 (5th Cir. 1967); whether the payment appears to balance disparate incomes, *In re Walder*, 2 BCD 1205 (W.D.Wisc.1976), *In re Massimini*, 8 B.R. 428 (Bkrtcy.W.D.Penn.1981); whether the obligation is payable in installments over a substantial period of time, *In re Smith*, 436 F.Supp. 469 (N.D.Ga.1977) and

whether there are children who must be supported, *In re Woods*, 3 BCD 750 (7th Cir. 1977).

Considering the facts of this case in light of these legal principles, this Court is satisfied that the husband's obligation to preserve the marital home by paying the attendant expenses clearly falls in the category of support rather than property settlement. See, *In re Maitlen*, Bankr.L.Rep. (CCH), ¶ 68,291, 658 F.2d 466 (7th Cir. 1981). The parties under the property settlement agreement retain ownership of the former marital home. The right of the former wife to use the premises is expressly contingent and terminates upon her remarrying or upon the attainment of majority by the youngest child. The Debtor's duty to pay the expenses of the home is limited to the minority years of the children. As stated by the Court in the case of *Poolman v. Poolman*, 289 F.2d 332 (8th Cir. 1961) at 335: "It is safe to say that the obligation to maintain and support a family includes the obligation to keep a roof over their heads. It is obvious that that is what the bankrupt undertook to do when he agreed to keep up the installment payments on the trust deed upon the home in which his divorced wife and children were to live. That the obligation has become unduly burdensome cannot be considered in determining the legal effect of his discharge."

While the foregoing resolves the question of the legal character of the liability of the Debtor imposed on him by the divorce decree concerning the former marital home, this does not necessarily compel the conclusion that the car payments fall in the same category. There is no question and it is uncontradicted that alimony as such was never demanded, never discussed, and in light of the apparent bitter experience of the Debtor concerning alimony obligation imposed on him by his prior divorce, he expressly discarded the idea of any alimony and this was agreed to by Mrs. Newman. She was awarded the full ownership of the Buick the automobile is not essential to give the children transportation. Thus, this Court is satisfied that this obligation is in the nature of a property settlement and not support.

A separate final judgment will be entered in accordance with the foregoing.