## In the Matter of William Herbert BAILEY, Debtor.

## Geneva Delores BAILEY, Plaintiff,

### v.

## William Herbert BAILEY, Defendant.

### Adv. No. 81–0207.

United States Bankruptcy Court, W. D. Wisconsin.

June 14, 1982.

William Rameker, Murphy, Stolper, Brewster & Desmond, S.C., Madison, Wis., for defendant.

Richard N. Holm, Hansen, Eggers, Berres & Kelley, S.C., William Rentz, Bolgrien, Ruth & Rentz, S.C., Beloit, Wis., for plaintiff.

## OPINION AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

William Herbert Bailey and Geneva Dolores Bailey were granted a final divorce on August 5, 1981, by the Circuit Court of Rock County. The divorce judgment provided that the marital property of the parties be divided equally. William was awarded the house and lot at 840 Happy Hollow Road, Beloit, Wisconsin, along with his household furnishings, credit union account, savings account, retirement fund, car and personal effects. Geneva was awarded the house, pole shed and land at Route 3, Bloomer, Wisconsin, (which had been purchased with money she had inherited), various tools, a car, personal effects and cash in the sum of $23,100, which was to be paid forthwith by William. The divorce decree also contained the following statement:

> The obligation of each party to pay maintenance shall be terminated, and said obligation for maintenance payments on behalf of both parties shall be forever barred.

On July 20, 1981, William transferred his interest in the Bloomer property to Geneva by means of a quitclaim deed. To date he has not paid to her $23,100 ordered by the divorce judgment, nor has she quitclaimed the Beloit property.

On August 14, 1981, William filed a voluntary petition in bankruptcy under chapter 7 of the Bankruptcy Code. On his schedule of secured creditors, Geneva was listed as holding a judgment of $23,100. William has since converted to a chapter 13.

On September 21, 1981, Geneva's divorce attorney, Leo H. Hansen, filed a motion in the Rock County Circuit Court to amend the divorce judgment. On October 20, 1981, a hearing was held on this motion, which resulted in a lien being affixed to the Beloit property for Geneva's benefit. Hansen testified that he had received the notice of the bankruptcy petition from Geneva before beginning this action in state court, but had not read the notice because he did not believe it applied to divorce proceedings. He did not consult any of his partners nor any other lawyers more familiar with bankruptcy law in forming his opinion as to the effect of bankruptcy filing. Hansen apparently brought his motion in state court without Geneva's knowledge.

On September 29, 1981, Geneva filed a complaint objecting to William's discharge in bankruptcy, and to the discharge of the debt owed to her. She also requested relief from the automatic stay. An amended complaint was filed on February 8, 1982. The only issue raised in the amended complaint which was considered at trial was whether the $23,100 owed to Geneva was in the nature of alimony, support or maintenance and, therefore, not a dischargeable debt under 11 U.S.C. § 523(a)(5).

In William's amended answer and counterclaim, he alleged that the debt to his former wife constituted a property settlement, dischargeable in bankruptcy. William counterclaimed against Geneva, alleging that the actions in state court after the filing of the bankruptcy petition were a violation of the automatic stay.

On February 18, 1982, William filed an application to avoid fixing the judicial lien of Geneva against the debtor's homestead. William claimed her lien was avoidable pursuant to 11 U.S.C. § 522(f). On February 25, Geneva filed a response opposing the application to avoid her lien.

This matter came before the court on March 4, 1982, in a consolidated hearing and trial to avoid the fixing of a judicial lien and to determine dischargeability and violation of the automatic stay. The parties agreed that the following are the only issues in contention:

1. Dischargeability

Whether the $23,100 owed to plaintiff is in the nature of alimony, support, or maintenance or is a division of property.

2. Remedy

Whether plaintiff is entitled to an equitable lien or mortgage on defendant's property, and,

Whether plaintiff may set off property she has been ordered to turn over to defendant against the money owed her.

3. Automatic Stay

Whether plaintiff or her attorney violated the automatic stay in securing the lien on defendant's homestead, and

4. Lien Avoidance

Whether defendant may avoid this judicial lien.

These issues will be considered separately.

*Dischargeability.* Section 523(a)(5) of title 11 U.S.C. provides:

A discharge under section 727, 1141 or 1328(b) or this title does not discharge an individual debtor from any debt—

to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in

the nature of alimony, maintenance, or support.

▮ In reviewing cases construing and applying 11 U.S.C. § 523(a)(5) some general principles have emerged. First, the burden of proof on the issue of whether an award is dischargeable is on the party objecting to discharge. *In Re Fox*, 5 B.R. 317, 6 B.C.D. 709 (Bkrtcy.N.D.Tex.1980), *In Re Daviau*, 16 B.R. 421 (Bkrtcy.D.Mass.1982).

▮ Second, what constitutes alimony, maintenance or support for purposes of determining dischargeability is a federal, not a state law question. *In Re White*, 9 B.R. 11 (Bkrtcy.E.D.Wis.1981), *In Re Warner*, 5 B.R. 434, 6 B.C.D. 788, [1978–1981 Transfer Binder] BANKR.L.REP. (CCH) ¶ 67,631, at 78,061 (Bkrtcy.D.Utah 1980), *In Re Hoover*, 14 B.R. 592 (Bkrtcy.N.D.Ohio 1981). This interpretation is consistent with the legislative history of 11 U.S.C. § 523(a)(5) which provides: "What constitutes alimony, maintenance, or support, will be determined under the bankruptcy law, not State law." H.R.Rep.No. 595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6320.

▮ Finally, the labels and recitations found in the divorce decree are not determinative of the nature of the awards. *In Re Warner, infra, In Re Carrigg*, 14 B.R. 658, 8 B.C.D. 330, 5 C.B.C.2d 446 (Bkrtcy.D.S.C. 1981). *In Re Ingram*, 5 B.R. 232 (Bkrtcy.N.D.Ga.1980). Courts have interpreted 11 U.S.C. § 523(a)(5), which requires that a liability actually be in the nature of alimony, maintenance or support, to mandate that they "look behind the recitations of the divorce decree to the substance of the situation." *In Re Carrigg*, 14 B.R. at 661, 8 B.C.D. at 331. This has been the interpretation of the courts in situations where the liability is labelled alimony, *In Re Warner, infra, In Re Nelson*, 16 B.R. 658, BANKR.L.REP. (CCH) ¶ 68,569, at 80,418 (Bkrtcy.M.D. Tenn.1981), and where the obligation is la-

belled a property settlement, *In Re Carrigg, infra.* In *In Re Carrigg*, for example, the husband's obligation to pay his wife $230 a month was labelled a property settlement in the divorce decree. Notwithstanding this label, the court found the husband's liability to be nondischargeable alimony: "The payments, required in the case at bar, relating to living expenses and terminating on the death or remarriage of the plaintiff appear to be in the nature of alimony, maintenance or support." 14 B.R. at 662, 8 B.C.D. at 332. *See also In Re Gentile*, 16 B.R. 381, 383 (Bkrtcy.S.D.Ohio 1982). ("It is of no consequence that the agreement expressly provides that there is to be no payment of alimony by either party, for it is well understood that language of the agreement is not controlling.")

▮ In determining whether an award is alimony, maintenance or support, courts have considered two types of evidence. First, they have looked at the form of the award. Is the award to be paid in installments, does it terminate on the death of either spouse or on the remarriage of the recipient spouse, is it labelled support by the divorce court? [1] These factors are given some weight as evidence of the parties' intentions, but will not defeat an award which is clearly intended to be for a spouse's support. As Judge Mabey explained in the *Warner* case, "If a debt is imposed to discharge the state law duty of support, no matter what the form of the obligation, it is not dischargeable. The award need not have the traditional characteristics of support." 5 B.R. at 440, 6 B.C.D. at 791.

Second, courts consider the circumstances of the parties to determine whether a need for support exists. It should be emphasized that even should a need for support exist, an award may not have been granted to alleviate this need and would therefore be dischargeable. In determining whether a need exists courts have considered the rela-

---

**1.** *In Re Carrigg, infra, In Re Ingram, infra, In Re Daviau, infra, In Re Newman*, 15 B.R. 67 (Bkrtcy.M.D.Fla.1981).

tive health, education and employment history of the spouses.[2]

In the present case, the award of $23,100 cannot be considered alimony, maintenance or support. The form of the award is more consistent with a property division than support. The award was to be paid as a lump sum, it was not made terminable on death or remarriage and it was labelled a property settlement by the divorce court. More importantly, the award does not appear to have been made to fulfill an obligation of support. Under Wisconsin law there is a presumption that marital assets will be divided equally between the spouses, absent factors such as the economic status of one which would make such a division unfair. Wis.Stat. § 767.255 (1977). In this case the judge chose, with the apparent consent of Geneva, to follow this presumption and divide the property equally. Given these circumstances, an unrebutted presumption arises that special circumstances of need were not considered by the court and that the award was intended to simply divide the property. Thus, this is very much like *In Re Baker*, MM13–80–00229 (Bkrtcy.W.D. Wis. August 28, 1980), in which the court noted: "Upon the record before the court, the divorce judgment in question appears to merely effect an equalization of property rights."

*Remedy.* The determination that the $23,100 owed to Geneva is a dischargeable property settlement does not necessarily mean that Geneva receives nothing further. The court must consider whether Geneva is entitled to have a secured claim allowed by virtue of an equitable lien or mortgage on the Beloit property or whether she may use her undivided one-half interest in the property as a setoff. In claiming these rights Geneva relies on this court's decision in *In Re Kinder*, No. MM13–81–00277, (Bkrtcy.W. D.Wis. Jan. 6, 1982). *In Re Kinder* presented a fact situation remarkably similar to the instant case. In *Kinder*, the debtor's former wife, Betty Woodstock, had been awarded $9,500 and required to execute a quitclaim deed to her former husband for the marital home, which was valued at $44,000. At the time Kinder filed his bankruptcy petition, listing Woodstock as an unsecured creditor, neither requirement had been met. The $9,500 award was admitted to be a property settlement dischargeable in bankruptcy. Woodstock was held to be a secured creditor in the *Kinder* case on equitable principles. The court found that either the doctrine of an equitable lien or a setoff could justify Woodstock retaining an interest in the debtor's real estate.[3]

The principles in *In Re Kinder*, seem applicable to the instant case. Equitable liens may be judicially imposed to prevent unjust enrichment:

> The equitable lien when imposed, not as a matter of contract, but to prevent unjust enrichment, is essentially a special, and limited, form of the constructive trust. It is given for reasons that, in principle, are the same as those that warrant the constructive trust, and it works in substantially the same way. The difference is that where the constructive trust gives a completed title to the plaintiff, the equitable lien only gives him a security interest in the property, which he can then use to satisfy a money claim. Thus an equitable lien may be "foreclosed", by selling the property that has been subjected to the lien by applying the proceeds to payment of the plaintiff's claim. Dobbs, *Remedies* § 4.3, page 249.

An equitable lien of the second type was upheld in *Caldwell v. Armstrong*, 342 F.2d 485, 490 (10th Cir. 1965).

> An equitable lien is a creature of equity, is based on the equitable doctrine of unjust enrichment, and is the right to have a fund or specific property applied to the payment of a particular debt. Such a lien may be declared by a court of equity

---

**2.** *In Re Fox*, 5 B.R. 317, 6 B.C.D. 709 (Bkrtcy.N. D.Tex.1980), *In Re Newman, infra, In Re Nelson, infra.*

**3.** An equitable mortgage is available under Wisconsin law only where a technical error prevented the creation of a legal mortgage, and is therefore not applicable in this case. *See Kinder* at 3.

out of general considerations of right and justice as applied to the relationship of the parties. (Footnotes omitted.)

In *Caldwell*, the bankrupt sought to discharge a divorce award. The divorced wife claimed the award was secured by a matured life insurance policy because the divorce decree required payment of the award from the insurance policy and provided that if Caldwell failed to do what was needed to pay the award out of the policy proceeds, " 'then this Decree shall have the full force and effect in law and equity of the partial assignments or any other paper or instrument which may be required by said Insurance Company to properly authorize and cause the payment of said sums to be made....' Also, the decree enjoined Caldwell from taking any action which would render the decree ineffective." *Caldwell* at 487, 488. The Court of Appeals held that the wife had an enforceable equitable lien on the insurance fund.

Wisconsin recognized the existence of equitable liens to prevent unjust enrichment in *Lewis v. Banking Comm.*, 225 Wis. 606, 612, 275 N.W. 429 (1937) where the court quoted with approval the Restatement, Restitution and Unjust Enrichment, § 161: "Where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises."

Wisconsin adopted guidelines regarding equitable liens in *McIntyre v. Cox*, 68 Wis.2d 597, 229 N.W.2d 613 (1975). Justice Heffernan stated:

> The essential elements of an equitable lien were stated in *Marshall Savings & Loan Asso. v. Chicago Nat. Bank* (1965), 56 Ill.App.2d 372, 378, 206 N.E.2d 117: "The essential elements of equitable liens include (1) a debt, duty or obligation owing by one person to another. *Watson v. Hobson*, 401, Ill 191, 81 NE2d 885 [7 A.L.R.2d 1156], and (2) a res to which that obligation fastens, which can be identified or described with reasonable certainty. *Freeman v. Freeman*, 314 Ill App 641, 42 NE 2d 315; *Hazenwinkle Grain Co. v. McComb*, 116 Ill App 541."

An equitable lien creates a security interest in the land. In *Bartholomew v. Thieding* (1937), 225 Wis. 135, 137, 138, 273 N.W. 468, the court acknowledged the creation of the security interest when it said, "[E]quitable liens arise from written contracts showing an intention to charge some particular property with the payment of a debt."

When considering contracts to determine whether the parties intended to create the security, the court applies the rule: "[E]quity will treat that as done which under the circumstances the parties had in mind and which in good conscience ought to have been done." *Luedtke v. Luedtke* (1923), 181 Wis. 471, 483, 195 N.W. 382. *McIntyre* at 602 [229 N.W.2d 613].

In *In Re Thumm*, 2 B.C.D. 1347 (Bkrtcy. E.D.Wis.1976) a divorced wife was found to be entitled to an equitable lien over the husband's homestead property. The divorce decree appropriated specific rental property as the source of the payments the husband sought to have discharged in bankruptcy. Judge Hilgendorf found that although the debt was dischargeable, the terms of the judgment created an equitable lien against the homestead property of the husband. *Thumm* at 1350.

The present case and *Kinder* are weaker cases for the creation of an equitable lien against the husband's property because no property was specifically allocated by the divorce decree to be the source of the disputed payment. As this court in *Kinder* stated, "although the facts in this case do not fit the elements for an equitable lien as neatly as *Caldwell* or *Thumm*, the guidelines in *McIntyre* do suggest considerable latitude in structuring the remedy to achieve what was or ought to have been intended." *Kinder* at 5.

The court in *Kinder* also considered the possibility of the wife being allowed to use her interest in the marital home to set off the debt owed to her under 11 U.S.C. § 553. Setoff has been suggested as a less preferred alternative for Geneva in the present case as well.

11 U.S.C. § 553 states:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;

(2) such claim was transferred, by an entity other than the debtor, to such creditor—

(A) after the commencement of the case; or

(B)(i) after 90 days before the date of the filing of the petition; and

(ii) while the debtor was insolvent; or

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor.

In order for Geneva to be able to effect a setoff, there must be mutual debts. A debt is the liability on a claim. 11 U.S.C. § 101(11). A claim is defined in 11 U.S.C. § 101(4) as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured....

William's obligation is a liability on a claim as defined in 11 U.S.C. § 101(4)(A) while Geneva's obligation is liability on a claim as defined in 11 U.S.C. § 101(4)(B). The first requirement of 11 U.S.C. § 553, mutual debt is satisfied. *See In Re Kinder.*

Although Geneva's claim arose less than 90 days before the date of the filing of the bankruptcy petition, she does not run afoul of 11 U.S.C. § 553(a)(3) because at least one of the other two requirements of that section is not met. She obviously did not acquire her claim against William, which arose as the result of the divorce decree, for the purpose of setoff. Thus, Geneva would be entitled to set off her one-half interest in the homestead against the $23,100 owed to her by the debtor.

Although, in *Kinder,* the court simply stated:

Therefore, by operation of the rules of equity discussed herein, Woodstock is entitled to be treated as having a secured claim to the extent of $9,500, and to be treated as a secured claimant in this chapter 13 proceeding, *Kinder* at 10,

the court clearly relied on the equitable lien, rather than the setoff rationale. In a setoff, the creditor does not become a secured creditor by virtue of the mutual claims, but simply retains the property owed to the debtor up to the value of the creditor's claim against the debtor. In *Kinder,* Woodstock was made a secured creditor, a remedy more in keeping with the equitable lien analysis. *Kinder* at 10.

In the instant case, the choice between the equitable theories significantly affects Geneva's recovery. If she were only allowed a setoff, she would be able to retain her half interest in the $21,300 Beloit property against the $23,100 owed to her. Thus, Geneva would only be able to recover approximately $10,650. If however, she were able to claim under an equitable lien theory, Geneva would receive a lien on the Beloit property up to the amount of her claim under the divorce decree.

There is nothing to suggest that such a lien is less supported by the facts of this case than those in *Kinder.* The divorce court considered an equal division of assets to be equitable in this case. There seems to be no reason to disturb that decision. Therefore, to do equity Geneva must be treated as having a secured claim to the extent of the value of the Beloit property up to $23,100.

■ *The automatic stay.* 11 U.S.C. § 362(a)(5) provides that the filing of a petition in bankruptcy acts as a stay, applicable to all entities, of any act to create, perfect or enforce any lien against property of the debtor, to the extent that such lien secures a claim that arose before the commencement of the case. Because Mr. Hansen's actions in state court created a lien against the debtor's exempt homestead, which is no longer part of the estate, they constituted a violation of the stay of 11 U.S.C. § 362(a)(5). This interpretation is supported by the legislative history which states:

> Paragraph (5) stays any act to create or enforce a lien against property of the debtor, that is, most property that is acquired after the date of the filing of the petition, *property that is exempt*, or property that does not pass to the estate, to the extent that the lien secures a prepetition claim. H.R.No. 95–595, 95th Cong., 1st Sess. 340–2 (1977), S.R.No. 95–989, 95th Cong., 2d Sess. 49–51 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5836, 6298 (emphasis added).

*See also* 2 Collier on Bankruptcy ¶ 362.04 (15th ed. 1981), *In Re Stern*, 9 B.R. 747, 3 C.B.C.2d 842 (Bkrtcy.E.D.Pa.1981).

Mr. Hansen admitted bringing a motion in state court to fix a lien on debtor's exempt property on September 21, 1981, after receipt of the notice of the filing of the bankruptcy petition. The lien was sought to secure Geneva's claim under the divorce judgment entered on August 5, 1981, before the commencement of the bankruptcy case. Thus, Mr. Hansen's actions constitute a clear violation of 11 U.S.C. § 362(a)(5).

■ Two justifications were offered for seeking the state court remedy. First, it was argued that Mr. Hansen's actions fell within the exception to the automatic stay in 11 U.S.C. § 362(b)(2) which provides that the filing of a petition in bankruptcy does not operate as a stay of the collection of alimony, maintenance or support from property that is not property of the estate. As discussed earlier in this opinion however,

the debt to Geneva was not alimony, maintenance or support, but rather a property settlement. Thus, Mr. Hansen's actions were not undertaken to collect alimony, maintenance and support and do not fall within this exception.

■ Mr. Hansen also claimed that he did not read the notice of the bankruptcy petition when he received it from Geneva because he did not believe the stay applied to his actions. This is not a sufficient excuse for violating the automatic stay. Indeed, this court has found creditors to have violated the automatic stay when they acted without notice of the bankruptcy petition. *See In Re Cherek*, Adv.Pro.No. 81–0193 (Bkrtcy.W.D.Wis. Nov. 30, 1981). In the instant case Mr. Hansen had notice of the stay but chose to ignore it. To allow this behavior to be so easily excused would undermine the very purpose for having a stay to protect the debtor's estate, and his property. Courts have consistently found that a mistake as to the law does not excuse the violation of the automatic stay. In *In Re Sandmar Corporation*, 12 B.R. 910, 7 B.C.D. 1327, 4 C.B.C.2d 1263, Bankr.L.Rep (CCH) ¶ 68,277, at 79,530 (Bkrtcy.D.N.M.1981), for example, the court found that where the creditor, an Indian tribe, had notice of the filing of the bankruptcy petition, its mistaken belief that is was not affected by the stay was not sufficient to prevent civil contempt sanctions from being imposed. Lawyers should be held to no lesser standard.

■ The next issues to address are what sanctions should be imposed for violation of the stay, and against whom should they be imposed. 11 U.S.C. § 105(a) confers upon the bankruptcy court the power to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. This power includes the authority to punish civil contempt. *In Re Mullen*, 14 B.R. 39, 8 B.C.D. 163, 5 C.B.C.2d 103 (Bkrtcy.S.D.Ohio 1981). *In Re Reed*, 11 B.R. 258, 7 B.C.D. 777, 4 C.B.C.2d 736, Bankr.L.Rep. (CCH) ¶ 68,344, at 79,734 (Bkrtcy.D.Utah 1981). *In Re Baum*, 15 B.R. 538, 5 C.B.C.2d 745 (Bkrtcy.E.D.Va.1981). The appropriate penalty for civil contempt

is to compensate the complaining party for any expenses incurred as a result of the action which is contempt. *In Re Wariner,* 16 B.R. 216, 5 C.B.C.2d 865 (Bkrtcy.N.D. Tex.1981). In the instant case William testified that he had incurred $560 in attorney and witness fees in defending the motion to amend judgment brought by Mr. Hansen in violation of the stay. Payment of these expenses is the appropriate sanction to impose. *See In Re Green,* 15 B.R. 75, 8 B.C.D. 770, 5 C.B.C.2d 733 (Bkrtcy.S.D.Ohio 1981), *In Re Asters,* 11 B.R. 483, 4 C.B.C.2d 707 (Bkrtcy.D.R.I.1981), *In Re Wariner, infra, In Re Reed, infra.*

It seems equitable that the sanction be imposed against Mr. Hansen, rather than Geneva. She sent him the notice of bankruptcy which he chose to ignore. Both testified that Mr. Hansen did not consult Geneva prior to beginning the state court action, but acted on his own initiative. There is nothing further Geneva could be expected to do to avoid the contempt committed. It would seem inequitable, under these circumstances to punish an unsophisticated nonlawyer for her attorney's dereliction. This approach was followed in *In Re Terry,* 12 B.R. 578, 7 B.C.D. 1218, Bankr.L.Rep. (CCH) ¶ 68,285, at 79,560 (Bkrtcy.E.D.Wis. 1981), in which a malpractice action was begun against the debtor by the attorney of a former patient, in violation of the stay. The attorney pleaded his lack of experience in bankruptcy matters. Judge Ihlenfeldt held that it would be unfair to punish the creditor for "the sins of his counsel", and assessed costs against the creditor's attorney. 12 B.R. at 581, 6 B.C.D. at 1219. The same approach shall be taken in this case.

■ *Lien Avoidance.* William argues that this court should avoid the state court imposed lien on his homestead, pursuant to 11 U.S.C. § 522(f). However, in view of this court's recognition of an equitable lien on the property in Geneva's favor, arising from the original divorce judgment, the question of avoiding the state court lien is moot.

Upon the foregoing opinion which constitutes my findings of fact and conclusions of law in this proceeding it is

ORDERED that

1). Geneva Bailey has a secured claim against William Bailey not to exceed $23,100 or the value of the real property held in their joint names at 840 Happy Hollow Road, Beloit, Wisconsin, whichever is less.

2). To the extent that Geneva Bailey's claim is not secured the debt of William Bailey to Geneva Bailey is discharged.

3). Leo H. Hansen shall be held to be in contempt of court, by reason of his violation of the stay imposed by 11 U.S.C. § 362, if within 20 days of the date of this order he has failed to reimburse William Bailey the sum of $560 for costs and fees incurred as a direct result of the violation of stay.