**In the Matter of Henry F. BISBACH, f/d/b/a the End Zone, Debtor.**

**Joyce E. BISBACH, Plaintiff,**

v.

**Henry F. BISBACH, Defendant.**

**Adv. No. 83–0197–7.**

United States Bankruptcy Court, W.D. Wisconsin.

Jan. 12, 1984.

Edward W.J. Falkner, McManus Law Offices, Madison, Wis., for plaintiff.

Kenneth J. Doran, Madison, Wis., for defendant.

## DECISION ON SUMMARY JUDGMENT AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

This proceeding was commenced to determine the dischargeability of an obligation of the defendant debtor under a divorce judgment which by its terms purported to make the obligation nondischargeable. The issue is presently before the court on the defendant's motion for summary judgment. The plaintiff has been represented by attorney Edward W.J. Falkner of Madison, Wisconsin and the defendant by attorney Kenneth J. Doran of Madison, Wisconsin. The background facts are as follows:

On March 18, 1983, Henry and Joyce Bisbach who have no dependent children were divorced after twenty-four years of marriage. Henry and Joyce agreed on a division of the marital estate by a stipulation which was incorporated in the divorce judgment. The stipulation's first section entitled "Property Settlement," began: "The following division and award of property shall constitute a full, fair and final division of the marital estate of the parties and in lieu of any and all maintenance to either party, maintenance being specifically waived," and went on to divide personal effects and real estate. The section next provided: "Further, in order to achieve a fair and equitable division of the property of the parties, ... [Henry] agrees to pay [Joyce] the sum of $3,000 within 72 hours of November 12, 1982 and to pay ... [Joyce] an additional $6,000 as follows: $3,000 on or before March 1, 1983 and $3,000 on or before May 15, 1983." After provisions dealing with business property and affording Joyce rights to rent an apartment at no or reduced rental, the property settlement section concluded: "That in regard to the $3,000 payment to be made by ... [Henry] to ... [Joyce] on March 1, 1983 and the $3,000 payment to be made ... on or before May 15, 1983 ... [Henry] agrees that said obligation shall not be dischargeable by bankruptcy; that if ... [Henry] should file bankruptcy before making said payments, that said payments may be construed as maintenance or in whatever manner necessary so as to be nondischargeable in bankruptcy."

Henry filed a chapter 7 bankruptcy petition on June 6, 1983 and seeks to discharge

the $3,000 payment due to Joyce on May 15, 1983. Joyce claims the payment is nondischargeable because the debt is either maintenance and 11 U.S.C. § 523(a)(5) applies, or because she relied on the stipulation of nondischargeability and thereby allowed Henry to obtain property by actual fraud under the provisions of 11 U.S.C. § 523(a)(2)(A).

The subject clause first attempts to define Henry's payments as maintenance, nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(5). However, a provision in a divorce agreement expressly describing an obligation as maintenance (or support) is insufficient to make the obligation nondischargeable unless payment is actually for the support of the spouse, *Vande Zande v. Vande Zande,* 22 B.R. 328, 330 (Bkrtcy.W.D. Wis.1982), *In Re Bailey,* 20 B.R. 906, 909 (Bkrtcy.W.D.Wis.1982); *see also* 3 *Collier on Bankruptcy* ¶ 523.15[5] (15th ed. 1981). This court stated in *In Re Bailey,* 20 B.R. 906 (Bkrtcy.W.D.Wis.1982) that "labels and recitations found in the divorce decree are not determinative of the nature of the awards," citing *In Re Carrigg,* 14 B.R. 658 (Bkrtcy.D.S.C.1981).[1] After discussing the type of evidence to consider in determining the nature of the award, it was determined in *Bailey* that a payment of $23,100 was part of the property settlement.[2]

However, the clause in question in this case attempts to avoid such a determination and render Henry's payments nondischargeable by characterizing the debt "in whatever manner necessary so as to be nondischargeable in bankruptcy." This type of clause is also unenforceable, *In Re George,* 15 B.R. 247 (Bkrtcy.N.D.Ohio 1981). In *George,* the parties incorporated into their divorce decree a separation agreement which provided that several joint debts would be paid by the husband. The agreement labelled the debts as alimony, and provided that the debts "shall not be discharged in bankruptcy." The court gave the limitation no credence stating:

> The clause in the Separation Agreement providing that the assumption of debts by Debtor was not dischargeable in bankruptcy is not enforceable unless the assumption of debts is in fact in the nature of alimony. To hold that this phrase made an otherwise dischargeable debt non-dischargeable would be to make of this clause a valid, pre-bankruptcy waiver of rights under the Bankruptcy Code.... Pre-bankruptcy waivers were held to be unenforceable as being in conflict with the purposes of the Bankruptcy Laws.... These waivers continue to be in conflict with the purposes of the Bankruptcy Code and thus the clause in question will be enforceable only if found to be in the nature of alimony....

*George* 15 B.R. at 248, 249.

However, even without reference to the construction clause of the stipulation,

---

1. In determining whether an award is alimony, maintenance or support, courts have considered two types of evidence. First, they have looked at the form of the award. Is the award to be paid in installments, does it terminate on the death of either spouse or on the remarriage of the recipient spouse, is it labelled support by the divorce court? These factors are given some weight as evidence of the parties' intentions, but will not defeat an award which is clearly intended to be for a spouse's support. As Judge Mabey explained in the [*In Re*] *Warner* [5 B.R. 434 Bkrtcy.Utah 1980] case, 'If a debt is imposed to discharge the state law duty of support, no matter what the form of the obligation, it is not dischargeable. The award need not have the traditional characteristics of support.' 5 B.R. at 440, 6 B.C.D. at 791.
   Second, courts consider the circumstances of the parties to determine whether a need for support exists. It should be emphasized that even should a need for support exist, an award may not have been granted to alleviate this need and would therefore be dischargeable. In determining whether a need exists courts have considered the relative health, education and employment history of the spouses.
   *Bailey,* 20 B.R. at 909–910 (footnotes omitted).

2. In the present case [*Bailey*], the award of $23,100 cannot be considered alimony, maintenance or support. The form of the award is more consistent with a property division than support. The award was to be paid as a lump sum, it was not made terminable on death or remarriage and it was labelled a property settlement by the divorce court. More importantly, the award does not appear to have been made to fulfill an obligation of support.
   *Bailey,* 20 B.R. at 910.

there is evidence in the present case that something other than mere division of the property may have been intended by the parties. The parties were unquestionably dividing property, as any couple married twenty-four years might, but that division was stated in the stipulation to be intended "in lieu of maintenance" and the provision for the wife to occupy an apartment at no rent or reduced rent for the first three years after the divorce may be evidence that there was a concern for her support. Thus, it remains at least partially a question of fact whether the duty to pay $3,000 on May 15 was an obligation for maintenance or support. Because that factual question remains, summary judgment in favor of the defendant is not available on that claim.

Joyce also claims the clause waiving Henry's right to discharge his obligation allowed Henry to obtain property by actual fraud. As to that claim the defendant is entitled to summary judgment of dismissal.

Elements of an 11 U.S.C. § 523(a)(2)(A) fraud claim are stated in *In Re Misjak*, 26 B.R. 914 (Bkrtcy.W.D.Wis.1983):

1.) The debtor obtained money or property through representations known to be false or made with reckless disregard for the truth amounting to willful misrepresentation;

2.) The debtor had an intent to deceive; and,

3.) The creditor actually and reasonably relied on the representation.

Assuming, for the purposes of this discussion only, that Joyce can prove that Henry knew the clause to be unenforceable and therefore false, and that he agreed to include the clause in the stipulation with the anticipation of filing bankruptcy and thus the intention to obtain a more favorable divorce award than he would otherwise receive,[3] it would still have to be demonstrated that as a matter of both fact and law Joyce's reliance on the subject clause in entering into the stipulation was reasonable.

A creditor must show actual reliance on a representation; this requires more than a mere contractual right to rely. *In Re Hollister*, 13 B.R. 178 (Bkrtcy.N.D. Tex.1981). Once actual reliance is shown, the focus shifts to the reasonableness of the reliance. *In Re Hagedorn*, 25 B.R. 666 (Bkrtcy.S.D.Ohio 1982). *Hagedorn* suggests that where a representation is factually false an ordinary care standard determines the reasonableness of reliance in 11 U.S.C. § 523(a)(2)(A) cases involving false representations. The extent of the duty to exercise ordinary care depends upon the relative sophistication of the parties, the nature of the representations, and the ease of conducting an investigation. However, it is far less clear that when the falsity of the representation arises from a misstatement of legal effect rather that a misstatement of a known fact that the same simple standard should be applied.

Although some courts have allowed fraud claims to succeed when a contractual promise was made with an undisclosed intent to breach, see *Plum Tree, Inc. v. N.K. Winston Corp.*, 351 F.Supp. 80 (S.D.N.Y.1972) and see *Morgan v. Inter-Continental Trading Corp.*, 232 F.Supp. 444 (E.D.Wis.1964), no case has been found which has equated the inclusion of an unenforceable contract term with fraud. "[F]or a fraud to be actionable, the representation relied on must be more than a promise which is void or unenforceable," *Barrett v. Independent Order of Foresters*, 625 F.2d 73, 74 (5th Cir.1980); see also *Gay v. Grace*, 433 F.2d 14 (5th Cir. 1970). In *Barrett*, a case involving an unenforceable contract promising plaintiff employment for life at fixed income levels, the court stated: "one cannot claim to be defrauded . . . where, by the exercise of ordinary diligence, such person could have discovered the falsity . . . before acting thereon. . . ." *Id.*

---

**3.** Henry paid two of the three payments; this is indicative of his good intentions, *In Re Byrd*, 9 B.R. 357 (Bkrtcy.D.C.1981).

■ Finally, a creditor's representation by an attorney affects the ordinary care standard. In *In Re Stewart,* 10 B.R. 214 (Bkrtcy.C.D.Cal.1981), a creditor entered into a stock purchase agreement with the debtor because of representations that the debtor had applied for a loan. The debtor made assurances about receiving the loan, and the creditor transferred his insurance business to debtor's corporation. The loan was never approved, the debtor filed bankruptcy, and the creditor claimed 11 U.S.C. § 523(a)(2)(A) applied. The court held that: "assuming ... [creditor] in fact relied upon defendant's oral representations as to the future approval of ... [the] loan application, such reliance was not reasonable, particularly since ... [creditor] was represented by counsel." The court noted that the attorney should have known the difficulties in obtaining the loan. Thus, something more than the ordinary care of a lay person must be demonstrated when a complaining creditor is represented by an attorney. The sophistication of the creditor must be presumed to increase when that creditor has active legal counsel.[4]

In the present case the fraud complained of arises from reliance on an agreed contract term which is unenforceable at law. Even if a fraud could otherwise be found in such a situation, which is dubious, the fact that the complaining creditor was actively counselled by an attorney when entering into the agreement means that as a matter of law any reliance by her on the clause as a representation of fact was unreasonable.

Upon the foregoing which constitutes my finding of facts and conclusions of law it is hereby

ORDERED that (a) plaintiff's claim under 11 U.S.C. § 523(a)(2)(A) be and hereby is dismissed.

(b) A trial on the remaining issues shall be held at the U.S. Bankruptcy Court, 44 East Mifflin Street, Suite 404, Madison, Wisconsin on the 7th day of June, 1984, beginning at 10:00 a.m.

(c) At least ten days prior to the trial date all parties are to exchange and file with the court copies of all exhibits they intend to introduce in evidence. If no written objection is made to the court and copy of the objection to the proponent within five days of the receipt of the proposed exhibit, such exhibits will be received in evidence without any further authentication.

Each party shall clearly number each proposed exhibit in the order of its probable presentation at trial (each document shall be given a separate exhibit number) and prepare a list of those numbered exhibits with a very brief identification of each. Copies of that exhibit list shall be exchanged with the copies of exhibits provided in the prior paragraph and 2 copies of the exhibit list shall be filed with the court.

(d) At least ten days prior to the trial date the parties are to exchange and file with the court the names of all witnesses they intend to present at trial together with a brief summary of the area of testimony said witness will present. All reasonably anticipated objections to testimony and all motions to limit testimony of a witness identified by an opposing party shall be made within five days after receipt of the witness list required by this paragraph.

(e) Three days prior to the trial each party shall file with the court and serve on opposing parties proposed detailed findings of fact and conclusions of law. A brief memorandum of authority for the conclusions may be filed with the proposed findings and conclusions.

---

4. While a person can rely on representations of a party having superior means of knowledge, *see De Swarte v. First National Bank,* 188 Wis. 455, 206 N.W. 887 (1926), this matter is between the attorney and client, not the client and client's adversary.